## In re LYON CARPET CO.

District Court, D. Massachusetts. January 9, 1928.

**1. Bankruptcy ⬤⟲195—Validity of attachments against bankrupt's property and effect of subsequent attachments by others are determinable by local law.**

Questions raised in bankruptcy proceeding as to validity of attachments against bankrupt's property when made, and effect of subsequent attachments by other creditors, being questions of property rights, are to be determined by law of state where attachments were made.

**2. Attachment ⬤⟲323—In Massachusetts, attachment against realty, to be valid against subsequent attaching creditors and purchasers, must be recorded in district where land lies (G. L. Mass. c. 36, § 12).**

Under G. L. Mass. c. 36, § 12, requiring instruments required to be recorded in registry of deeds to be recorded in district where land lies, attachment of realty, to be valid as against subsequent attaching creditors and purchasers, must be recorded in district where land lies, and it is not sufficient if recorded in any other district within the county, notwithstanding recital in chapter 223, § 63, permitting recording in "county or district where the land lies."

**3. Attachment ⬤⟲323—In Massachusetts, unrecorded attachment is valid between parties and against others except subsequent attaching creditors or good-faith purchasers (G. L. Mass. c. 223, § 66).**

Under G. L. Mass. c. 223, § 66, an unrecorded attachment is valid between the parties and against all other persons except subsequent attaching creditors or subsequent purchasers in good faith and for value.

**4. Attachment ⬤⟲323—In Massachusetts, subsequent attaching creditor prevails over prior unrecorded attachment, regardless of his knowledge of attachment (G. L. Mass. c. 223, § 63).**

Under G. L. Mass. c. 223, § 63, a subsequent attaching creditor prevails over a prior unrecorded attachment, even though he has actual knowledge of attachment.

**5. Vendor and purchaser ⬤⟲242—Burden of proving subsequent grantee had notice of prior unrecorded instrument is on person claiming thereunder.**

Where notice of a prior unrecorded instrument, such as unrecorded deed, is material on rights of person subsequently dealing with property, burden of proving that subsequent grantee had notice of prior unrecorded instrument is on person claiming under such prior unrecorded instrument.

**6. Bankruptcy ⬤⟲195—Evidence held not to sustain burden on prior attaching creditor of proving that subsequent attaching creditors had knowledge of its prior unrecorded attachment (G. L. Mass. c. 223, § 63).**

In bankruptcy proceeding involving validity, as against subsequent attachments properly recorded, of attachment lien against bankrupt's realty, recorded in the county but not in the district in which land was situated as required by G. L. Mass. c. 223, § 63, evidence *held* not to sustain burden on prior attaching creditor of proving that subsequent attaching creditors had actual knowledge of its prior unrecorded attachment, even if notice were material.

**7. Bankruptcy ⬤⟲205—Bankruptcy trustee's right to enforce attachment liens as against prior unrecorded attachment is not affected by his knowledge of unrecorded lien obtained in individual capacity.**

Right of bankruptcy trustee to enforce liens of attaching creditors under properly recorded attachments as against lien of prior unrecorded attachment is not affected by his knowledge of the unrecorded attachment obtained in his individual capacity.

**8. Bankruptcy ⬤⟲195—Under bankruptcy court order preserving attaching creditors' liens, trustee held proceeds of sale of attached realty free of prior unrecorded attachment lien (G. L. Mass. c. 36, § 12, and c. 223, §§ 63, 66).**

Where rights of attaching creditors under their properly recorded attachment liens were

preserved for benefit of estate by order of bankruptcy court, and aggregate amount of such liens was in excess of proceeds of sale of attached real estate, bankruptcy trustee held proceeds free and clear of alleged lien of prior unrecorded attachment, under G. L. Mass. c. 223, §§ 63, 66, and chapter 36, § 12.

In Bankruptcy. In the matter of the Lyon Carpet Company, bankrupt. On bankruptcy trustee's petition to determine the validity of an attachment lien claimed by the Beacon Trust Company on the bankrupt's real estate. Decree in accordance with opinion.

Following is the opinion of Referee Young, affirmed by the court:

This is a petition by the trustee in bankruptcy of the Lyon Carpet Company to determine the validity of an attachment lien claimed by the Beacon Trust Company upon certain real estate of the bankrupt situated in Lowell. The facts in regard to the attachment lien are as follows:

By a writ dated May 13, 1925, the Beacon Trust Company brought an action against the Lyon Carpet Company in the superior court for Suffolk county. The writ directed the officer to attach all the real estate of the defendant in Middlesex county to the value of $20,000, which was the amount of the ad damnum in the writ. By the officer's return it appears that on the same day, May 13, 1925, he attached all the real estate of the defendant in Middlesex county. On the same day the officer deposited a copy of the writ, with so much of the return as related to the attachment, in the registry of deeds for the Southern district of Middlesex county at Cambridge, but no record of the attachment was deposited in the registry for the Northern district at Lowell. The Lyon Carpet Company owned no real estate in the Southern registry district of the county, but did own real estate in the Northern district, to wit, at Lowell. The writ was duly entered in court. Thereafter, on August 18, 1925, by supplementary proceedings in the same action under G. L. c. 223, § 85, the Beacon Trust Company obtained from the court in which the action was pending a special precept directing the attachment of all the real estate of the defendant in Middlesex county to the value of $20,000, and on the same day an officer made the attachment pursuant to the precept and caused the attachment to be duly recorded in the registry of deeds for the Northern district of Middlesex county at Lowell. The voluntary petition in bankruptcy was filed September 28, 1925. The claim of the Beacon Trust Company up-

on which this action was founded has since been allowed as an unsecured claim in the sum of $13,024.77, without prejudice, however, to the rights of the Beacon Trust Company to claim the security of the attachment lien, the validity of which is to be determined by the bankruptcy court. The real estate of the bankrupt has been sold for $10,000, subject to a stipulation that the lien, if valid, is to attach to the proceeds of the sale in the hands of the trustee in bankruptcy.

In addition to the foregoing facts, which are not in dispute, the parties have filed an agreed statement of facts with reference to other attachment liens upon the same real estate, the material parts of which are as follows:

"Andover National Bank, a creditor of the above-named bankrupt, having a provable claim in the sum of $5,000 and interest from July 9, 1924, brought an action for $10,000 against the Lyon Carpet Company in the Essex county superior court by writ dated August 5, 1925, and returnable the first Monday of September, 1925. An attachment in the amount of $10,000 of the defendant's real estate in Lowell was made and duly recorded in the Middlesex registry of deeds, Northern district, on August 8, 1925, at 9:06 a. m. This action was entered September 8, 1925. * * * E. A. Wilson Company, a creditor having a provable claim in the sum of $5,237.39, brought two actions against the Lyon Carpet Company, one for $5,000 by writ dated September 1, 1925, and returnable to the Middlesex superior court the first Monday of October, 1925, and the other for $2,000 by writ dated September 24, 1925, and returnable to said Middlesex superior court the first Monday in December, 1925. In the first action an attachment of the defendant's real estate in the amount of $5,000 was made and duly recorded September 2, 1925, at 8:30 a. m. This action was entered October 5, 1925; defendant's answer was filed October 27, 1925, the declaration being in the amount of $2,738.05. In the second suit an attachment of $2,000 was made and duly recorded on September 26, 1925, at 8:30 a. m.; both of said attachments being recorded in the Middlesex registry of deeds, Northern district. The second suit was not entered in court. Robert A. Boit & Co., having a provable claim against said bankrupt in the amount of $1,082.82, brought an action against the Lyon Carpet Company for $2,000 in the district court of Lowell by writ dated September 5, 1925, and returnable September 26, 1925. An attachment of the de-

fendant's real estate in the amount of $2,-000 was made and duly recorded in the Middlesex registry of deeds, Northern district, on September 16, 1925, at 8:30 a. m. This action was entered September 26, 1925. * * * The Lyon Carpet Company was insolvent when said actions were begun and said attachments made."

There has been filed with me, and I have allowed, a petition by the trustee praying that the aforesaid liens of the Andover National Bank, Wilson Company, and Boit, and also the lien of the Beacon Trust Company created by the attachment on special precept of August 18, be preserved for the benefit of the estate, and that the trustee be subrogated to the rights of said creditors under said liens. By the Bankruptcy Act, § 67f (11 USCA § 107) these liens, having been obtained through legal proceedings while the bankrupt was insolvent and within four months of the filing of the bankruptcy petition, would have been "null and void" unless so preserved for the benefit of the estate. The preservation of the rights under these liens is expressly authorized by section 67f, and the trustee's right of subrogation is expressly conferred by section 67b.

[1] The only question raised by the foregoing facts concerns the validity of the original attachment of the Beacon Trust Company, made on May 13. It is obvious that the second attachment, that made by the special precept, if valid for any purpose when made, is now lost to the Beacon Trust Company by virtue of the provisions of the Bankruptcy Act, § 67f, and the proceedings taken thereunder already discussed. The first attachment, however, is not affected by section 67f, having been made more than four months prior to the filing of the bankruptcy petition. The questions with reference to the first attachment are, first, whether it was valid when made; and, second, whether, if valid when made, it has since been invalidated by the subsequent attachments made by other creditors already referred to. These being questions of property rights, they are to be determined by the laws of the state where the attachments were made. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275; Martin v. Commercial National Bank, 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441; Carey v. Donahue, 240 U. S. 430, 36 S. Ct. 386, 60 L. Ed. 726. It is necessary, therefore, to examine the Massachusetts statutes relative to real estate attachments.

First, as to the validity of the attachment when made, G. L. c. 223, § 62, pro-vides that an officer in attaching real estate need not "enter upon the land or be within view of it," and it has been held under this statute that all that the officer has to do in order to effect a valid attachment of real estate is to make a return on the writ to the effect that he has made an attachment. Taylor v. Mixter, 11 Pick. (Mass.) 341. It was there said at page 347:

" * * * We consider it settled that, in order to make a valid attachment, the officer is under no necessity to enter upon the land, or see it, or go into its vicinity, nor is it necessary to do any act, other than return, that he has attached the land."

It is necessary also here to consider the state statutes relative to the recording of real estate attachments.

G. L. c. 223, § 63, provides as follows:

"No attachment on mesne process of land or of any leasehold estate shall be valid against a subsequent attaching creditor, or against a subsequent purchaser in good faith and for value, unless the officer deposits a certified copy of the original writ, without the declaration, and so much of his return thereon as relates to the attachment of the estate, in the registry of deeds for the county or district where the land lies."

G. L. c. 223, § 66, provides as follows:

"If the copy of the writ is deposited, as aforesaid, within three days after the day when the attachment was made, the attachment shall take effect from the time it was made, otherwise, from the time when the copy is so deposited; but attachments of land, and of leasehold estates which have an original term of more than seven years, shall not be valid against purchasers in good faith and for value, other than parties defendant, except from the time when the copy is deposited as aforesaid, or, in cases where the owner of the land sought to be attached is wrongly named in the writ, and the writ is afterward seasonably amended in that respect, then except from the time when a correspondingly amended copy is deposited as aforesaid."

[2] It has been urged on behalf of the Beacon Trust Company that the recording of the attachment at Cambridge constituted a compliance with section 63, quoted above, because that section permits recording in the "county or district where the land lies," and that therefore the recording is sufficient if done in any registry of deeds within the county. This argument is conclusively disposed of by G. L. c. 36, § 12, which provides as follows:

"Every deed and other instrument re

quired to be recorded in the registry of deeds shall be recorded in the registry of deeds for the district where the land lies to which such deed or instrument relates; and in all things relating to the register or registry of deeds, each district therefor shall be deemed a county."

[3] I therefore rule as a matter of law that the attachment was never recorded, and that the filing of it at Cambridge was wholly ineffectual. Strictly construed, the language of section 66, quoted above, would seem to mean that an unrecorded attachment could never be valid for any purpose, because it could not take effect until recorded; but the section has been construed otherwise. It has been held that an unrecorded attachment is valid between the parties and against all other persons except subsequent attaching creditors or subsequent purchasers in good faith and for value. Coffin v. Ray, 1 Metc. (Mass.) 212; Pomroy v. Stevens, 11 Metc. (Mass.) 244. In Pomroy v. Stevens it was said:

"This provision is made for the benefit of subsequent purchasers and attaching creditors, and by them only can advantage be taken of any noncompliance therewith." Page 246.

[4] Since the attachment was therefore valid when made, the second question concerning the attachment is whether it was invalidated to any extent by subsequent attachments. The agreed facts already quoted show that there were three subsequent attaching creditors, the Andover National Bank, E. A. Wilson Company, and Robert A. Boit & Co. It has been suggested by counsel for the Beason Trust Company that, if any of these creditors at the time of making his attachment knew of the prior unrecorded attachment of the Beacon Trust Company, said prior attachment would not be invalidated by such creditor's subsequent attachment. G. L. c. 223, § 63, it will be observed, says nothing about notice. Construed literally, this section would seem to make an unrecorded attachment invalid against subsequent attachments, whether the subsequent attaching creditor had notice of the unrecorded attachment or not. The absence of words in regard to notice, however, is not conclusive on this point, because it has been held that the purpose of the whole system of recording acts is to protect parties who subsequently act without knowledge of a prior unrecorded instrument. Houghton v. Bartholomew, 10 Metc. (Mass.) 138. It has been decided, however, that a subsequent attaching creditor prevails over a prior un-

recorded attachment, even though he has actual knowledge thereof. McGregor v. Brown, 5 Pick. (Mass.) 170. It was there said:

"As to the right of property, it is said that the subsequently attaching creditors cannot hold the land; for that they had notice of the plaintiffs' attachment; and the case has been likened to one in which a party has notice of a prior unrecorded deed. But the same principle does not apply in the case of a prior attachment. It does not appear that the intervening creditors knew that the plaintiffs would recover a judgment and would levy on the land; and, besides, all creditors who are in pursuit of satisfaction of their debts by means of attachment, are considered as running a race on equal ground, and each is entitled to take advantage of defects in the proceedings of the others." Page 174.

Although some doubt is cast upon this case by the later case of Houghton v. Bartholomew, supra, yet it has not been overruled, and must therefore be regarded as binding.

[5, 6] At the hearings some evidence on this question of notice was introduced. In cases where notice of a prior unrecorded instrument is material, as in the case of an unrecorded deed, it has been held that the burden of proving that the subsequent grantee had notice of the prior unrecorded instrument was upon the person claiming under such prior unrecorded instrument. Pomroy v. Stevens, 11 Metc. (Mass.) 244. Even if notice were material in this case, on the evidence presented the Beacon Trust Company has failed to sustain the burden of proving that any of the three subsequent attaching creditors in question had actual knowledge of the prior unrecorded attachment. The only witness who testified on this question was George A. Lyon, treasurer of the bankrupt corporation. He said that some one on behalf of the Andover National Bank had "just mentioned" the attachment, and that he thought that a director of Wilson Company knew of the attachment; but the substance of his testimony was that so many of his creditors had talked to him about the attachment that he was not able to recall specific conversations with any of them. The evidence would certainly not be sufficient to prove actual knowledge on the part of any of these three creditors, if there were no question of bankruptcy, and if the sole issue were between the Beacon Trust Company and these creditors; and it is on this basis that the decision must rest.

[7] In connection with the right of the trus-

tee in bankruptcy to enforce the liens of the Andover National Bank, Wilson Company, and Boit & Co., evidence was introduced tending to prove that John L. Robertson, who was subsequently elected trustee, and who is the present trustee, had known of the unrecorded attachment of the Beacon Trust Company for some time prior to the commencement of bankruptcy proceedings. The argument would seem to be that the trustee could not avoid the prior unrecorded lien if he as an individual had had knowledge of it. The evidence would warrant a finding that Mr. Robertson had actual knowledge of the attachment. No authorities have been cited by counsel upon the materiality of such knowledge, and I have not discovered any authorities on the point. There would seem to be no valid reason for charging the trustee in bankruptcy in his official capacity with knowledge which he had previously obtained as an individual. The obvious intent of the Bankruptcy Act is to vest the trustee in his official capacity with certain property rights. There is nothing in the act to indicate that these property rights are to be affected by the circumstance of who the trustee in a particular case happens to be, or what facts he as an individual happens to have known. The individual knowledge of the trustee in this case must therefore be deemed immaterial.

[8] Since the rights of the three attaching creditors under their liens have been preserved for the benefit of the estate as aforesaid, and the aggregate amount of said liens is in excess of the proceeds of the sale of the attached real estate, it follows that the trustee holds said sum free and clear of the alleged lien of the Beacon Trust Company.

The same result follows on another ground by virtue of section 47a(2) of the Bankruptcy Act (11 USCA § 75), namely, the so-called amendment of 1910, which reads as follows:

" * * * And such trustees as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. * * * "

The real estate in this case and the proceeds of the sale thereof have at no time been held by any adverse claimant, and have been in the custody of the bankruptcy court

at all times since the adjudication. A conflict of authority exists with regard to the correct construction and effect of said amendment of 1910. The weight of authority is clearly stated by Mack, J., in the case of In re Duker Ave. Meat Market (C. C. A.) 2 F. (2d) 699, as follows:

"It is now well settled that under the 1910 amendment of the Bankruptcy Act, § 47a, the trustee's rights as against the mortgagee are not dependent upon an actual lien obtained by a creditor before bankruptcy; he has whatever rights any and all creditors could under the state law have obtained by legal or equitable proceedings before bankruptcy."

Gilbert's Collier on Bankruptcy, Edition of 1927, discusses this question on page 691 as follows:

"The class of cases, unprovided for by the original act, and intended to be reached by the amendment, was that in which no creditors had acquired liens by legal or equitable proceedings, and the purpose of the amendment was to vest in the trustee, for the interest of all creditors, the potential rights of creditors potential with such liens. The language is readily susceptible of this construction. It aptly refers to such rights, remedies, and powers as a creditor holding a lien is entitled to under the law, rather than to the rights, remedies, and powers of a creditor who had actually fastened a lien on the property of the bankruptcy estate."

See the many authorities cited in footnotes Nos. 67 and 68, p. 692. See, also, Remington on Bankruptcy, § 1508, to the same effect. The C. C. A. for the Sixth Circuit has said, in Potter Manufacturing Co. v. Arthur, 220 F. 843:

"It cannot be said that the intent of the amendment was only to put the trustee in the position of a creditor who had, in fact, obtained a lien, because that was the law before the amendment."

See, also, In re Bazemore (D. C.) 189 F. 236, in which case the court said:

"If the operation of the amendment is restricted to cases in which a creditor has in fact acquired a lien by legal or equitable proceedings, then it adds nothing to the law as it was under the original act."

I have been somewhat in doubt as to the rule which should be followed in the district of Massachusetts by reason of the opinion of the court in the case of In re Rogers (D. C.) 288 F. 140, where the court said:

"Section 47a of the Bankruptcy Act (Comp. St. § 9631 [11 USCA § 75]) in-

vests the trustee with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable process thereon. This statute has been held to apply only to the rights of creditors actually holding a lien by legal process. In re Gay & Sturgis (D. C.) 251 F. 420; Bailey v. Baker Ice & Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275. If it should appear that there was no creditor holding a lien by legal process at the time of the filing of the petition in bankruptcy, then the trustee would acquire no greater rights in the merchandise than the bankrupt then had. 'There are no allegations in the petition respecting such liens, and no presumption can be made either for or against the petitioner in that regard." Page 142.

It was to prevent the necessity of reopening the hearings in this case for the taking of evidence with regard to liens actually in existence prior to bankruptcy that I made up the complete record of facts hereinabove set forth. In view of the fact that the three attaching creditors referred to had perfected the liens under Massachusetts law, it would seem that the trustee in bankruptcy should prevail against the Beacon Trust Company, whatever may be the correct interpretation of said section 47a(2).

A decree will accordingly be entered to the effect that, upon the petition of the trustee in bankruptcy to determine the validity of the lien claimed by the Beacon Trust Company, said lien is adjudged to be wholly invalid, and that the entire sum of $10,000, being the proceeds of the sale of the real estate of the bankrupt, vests exclusively in the trustee for the benefit of general creditors.

Joseph H. Rosenshine, of Boston, Mass., for the trustee.

David Stoneman and Robert Clayton, both of Boston, Mass., for Beacon Trust Co.

BREWSTER, District Judge. The above-entitled matter is before me on referee's certificate. It brings into question the propriety of an order adjudging invalid an alleged lien by the Beacon Trust Company. The lien is asserted as a result of an attachment upon bankrupt's real estate, which the referee finds to be ineffectual to create a lien valid as against the trustee in bankruptcy, the rights of subsequent attaching creditors having been duly preserved for the benefit of the estate. Accompanying the certificate is an elaborate opinion of the learned referee, in which he sets forth the facts of the case and considers the statutes, state and federal, applicable to the situation presented.

Inasmuch as I am entirely in accord with his conclusion and regard the reasoning on which it is based as wholly satisfactory, I affirm the order without comment other than to add that I can see no conflict between the conclusion here reached and In re Rogers (D. C.) 288 F. 140. Here we have liens attaching by virtue of subsequent attachments of creditors which were prior liens upon the bankrupt's real estate, and which liens were not dissolved by the bankruptcy proceedings, but, on the contrary, by order of court, were preserved for the benefit of the estate.