## WHITLEY GROCERY COMPANY *v.* ROACH, trustee.

1. Where several persons co-operate in making an inventory of a stock of merchandise, such inventory as a whole is not admissible in evidence as a memorandum in connection with the testimony of any one of them, unless he can verify and adopt it in its entirety as representing his knowledge on the subject.
2. There was no material error in instructing the jury to the effect that in determining whether a transfer of his property by a debtor was made within four months next preceding the filing of a petition in bankruptcy against him, they should, in computing the time, exclude the day upon which the transfer was made and include the day upon which the petition was filed.
3. The verdict in this case was warranted by the evidence.

Submitted May 1, — Decided July 19, 1902.

Equitable petition.    Before Judge Littlejohn.    Sumter superior· court.    December 23, 1901.

*Allen Fort & Son* and *C. R. Winchester*, for plaintiff in error. *J. H. Lumpkin* and *W. P. Wallis*, contra.

FISH, J.    Roach, as trustee for Bagley, a bankrupt, sued the· Whitley Grocery Company and the Bank of Southwestern Georgia, to recover certain personalty, or its value, which plaintiff alleged that Bagley, while insolvent, for the purpose of paying his past-due indebtedness to defendants, and with the intention, then known to them, of giving them a preference over his other creditors, had transferred to defendants within four months prior to the filing of the petition in bankruptcy against him.    Upon the trial a

verdict was rendered for the plaintiff against the Whitley Grocery Company; it moved for a new trial, which being refused, it excepted.

1. Two stocks of merchandise, located, at the time of the transfer, in Sumter county, were portions of the property for which the action was brought. The value of this merchandise and the exact date on which it was transferred by Bagley were important questions in the trial of the case. It appeared that Bagley sold the merchandise to Clegg, an agent of the Whitley Grocery Company, and that Clegg afterwards sold it to "The Cash Store" at Cordele. Defendants, for the purpose of showing the date it was made and the value of the merchandise, offered in evidence an inventory of the goods, purporting to have been made by Hearn, one of the partners who owned "The Cash Store," and Horne and Collins, two clerks therein, after the sale by Clegg to "The Cash Store." This inventory was offered in connection with the testimony of Hearn and Horne; Collins not being introduced as a witness. It was excluded by the court, and this ruling was complained of in the motion for a new trial. There was no merit in the complaint. Hearn, on cross-examination, in reference to the inventory, testified as follows: "Mr. Horne and Mr. Collins made all these entries in this book. This is the book. That 'A. G. S.' is the cost mark. 'Leo Washington' was the cost mark. Mr. Horne wrote this. The book was written by Mr. Horne and Mr. Jim Collins; there is where Mr. Collins wrote [indicating]. I didn't do any of the writing, I called it out; they put it down as I called it out, did it under my directions part of the time. Mr. Horne called some and Mr. Collins; we were all in it. . . I say that I took that invoice and made that entry in that book on the first day of November; that is what the book shows now, and I say so. Mr. Horne or I one made that entry. [Examining entry] Mr. Horne made it. I am swearing to that because I saw it when it was done." Horne testified, as to the inventory: "I know something about the invoice presented in book; it is the invoice of the Bagley stock, that is, so much as was received at The Cash Store; that is the invoice that was taken at The Cash Store, checked up what we received. That is a correct invoice. This submitted to me is in my handwriting, and it is correct; it is all right." Hearn and Horne both swore, in a general way, that the inventory was correct, but it is evident that they could

not know of this of their own knowledge. Hearn's testimony that it was made by himself, Horne, and Collins, in the manner set forth in his evidence, was not controverted, so we take it as true that the inventory was prepared in that way. Hearn made none of the entries; he simply called items for Horne or Collins to enter. What items he called and who entered them, Horne or Collins, did not appear. Horne and Collins also called items, and the one entered those called by the other, but such items were not identified, and it did not appear that Hearn had any knowledge whatever of them. Nor was it shown that Horne had any knowledge of the items called by Hearn and entered by Collins. The inventory as a whole was, therefore, not admissible as a memorandum upon the testimony of Hearn or Horne, or their joint testimony, because neither of them aided in the preparation of all of it, and it could not possibly represent their respective recollections of the items called and the entries made about which they, respectively, had no knowledge at the time the inventory was prepared. Moreover, the portion of the inventory made up of the items called by Collins and entered by Horne would seem, in the absence of Collins's testimony as to their correctness, to be mere hearsay. · It was held in *Phenix Insurance Co.* v. *Hart*, 112 *Ga.* 765 (4), that: " Before a memorandum made for the purpose of preserving a record of a given fact or transaction can, in any event, be admitted in evidence as original testimony, it must affirmatively appear that it was made by the witness in connection with whose testimony it is offered, and that testimony must show absolutely the genuineness and correctness of the memorandum." See also 1 Gr. Ev. (15th ed.) § 439b.

2. Section 60b of the bankrupt act of 1898 provides: "If a bankrupt shall have given a preference within four months before the filing of a petition, . . and the person receiving it, . . or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person." The court instructed the jury to the effect, that, in determining whether the transfer of his property by Bagley to Clegg was made within four months next preceding the filing of the petition in bankruptcy against Bagley, they should, in computing the time, exclude the day on which the transfer was made and include the day on which the petition was filed. Error

was assigned upon this charge. The petition against Bagley was filed March 2, 1899, and there was evidence from which the jury could find that he made the transfer to Clegg on November 2, 1898. The rule for the computation of time was therefore very material. While it would have been technically more accurate for the court to have instructed the jury to include the day when the transfer of the property occurred and exclude the day when the petition was filed, we can not see how the plaintiff in error was hurt by the rule laid down by the court for computing the period of four months before the filing of the petition in bankruptcy, within which the assignment of his property by the bankrupt must have been made in order to authorize a recovery of the property or its value by the trustee. It is clear that both the day when the assignment was made and the day when the petition in bankruptcy was filed can not be included in the computation; the one or the other must be excluded. Unless both these days can be included in the computation, there is no real merit in the exception to the charge of the court; and we know of no authority which would authorize this to be done. If, as would seem to be most natural, in computing a given period of time *before* the happening of a particular event, the date when the petition was filed be taken as the terminus a quo and the time reckoned backward from this event, excluding the day on which it occurred and including the day when the assignment was made, precisely the same result would be reached as would be attained if the computation were made as the court directed, that is, forward, excluding the day when the assignment was made and including the day when the petition was filed. If, including the day of the transfer and excluding the day of the filing of the petition, the computation would show that the period of four months had not expired, it seems to us clear that excluding the day of the transfer and including the day of the filing would show that this period of time had not elapsed. On the other hand, if the computation in the one case would show that the four months had expired, the computation in the other case would necessarily show the same thing.

In Dutcher *v.* Wright, 94 U. S. 553, in construing the phrase, "within four months before the filing of the petition," as contained in the bankrupt act of 1867, the Supreme Court of the United States laid down the rule, that: "In computing the four months

before filing the petition in bankruptcy, within which time the assignment of his property by an insolvent debtor, with a view to give a preference to any creditor, is void, the day upon which the petition is filed must be excluded." But Mr. Justice Clifford, in delivering the opinion, said : " Taken literally, it might be suggested that the phrase, 'four months before the filing of the petition,' would exclude the day the petition was filed, fractions of a day being forbidden in such a computation ; nor would it benefit the respondents if the rule prescribed by sect. 5013 of the Revised Statutes should be applied, which is, that in all cases in which any particular number of days is prescribed in that title, or shall be mentioned in any rule or order of court, or general order, which shall at any time be made for the doing of any act, or for any other purpose, the same shall be reckoned, in the absence of any expression to the contrary, exclusive of the first and inclusive of the last day. Where the phrase to be construed does not contain any expression to the contrary, the enactment is that that rule shall apply, leaving it to be understood that the phrase to be construed may contain words prescribing its own rule in that regard, and that if it contains any inconsistent expression to the contrary, that the rule prescribed in that section shall not necessarily control the meaning of the phrase to be construed. Apply that qualification to the rule prescribed in sect. 5013, and still it might be suggested that the meaning of the phrase, 'within four months before the filing of the petition,' is entirely consistent with that rule. Unless the day when the notes, accounts, and property were assigned, and the day when the petition in bankruptcy was filed, are both included in the computation, the defence fails, and the complainant is entitled to an affirmance of the decree. Neither argument nor authority is found in the brief of the respondents supporting any such rule of construction, and it is believed that no decided case can be referred to, where such a theory was ever adopted. Decided cases may be found in which it is held, where the act is required by statute to be done a certain number of days at least before a given event, that the time must be reckoned, excluding both the day of the act and that of the event. The Queen v. The Justices, 8 Ad. & E. 173 ; Mitchell v. Foster, 12 Id. 172 ; Zouch v. Empsey, 4 B. & Ald. 522. Search has been made in vain for a decided case in which it is held that both the day of the act and the day of the event shall be in-

cluded in the computation, in order to ascertain the specified period of time." In that case it was adjudged that a conveyance, made on December 8, 1869, was "within four months before" a petition filed April 8, 1870.

The present bankrupt act ·contains a provision substantially similar to that in section 5013 of the Revised Statutes, which is dealt with in the above-quoted extract from the opinion in the Dutcher case. Section 31 of the act now under consideration is as follows: "Whenever time is enumerated by days in this act, or in any proceeding in bankruptcy, the number of days shall be computed by excluding the first and including the last, unless the last fall on a Sunday or holiday, in which event the day last included shall be the next day thereafter which is not a Sunday or a legal holiday." In re Stevenson,. 94 Fed. 110, it was held: "The four months after the commission of an act of bankruptcy within which, under the provisions of the bankrupt act of July 1, 1898, a petition in involuntary bankruptcy must be filed, are to be so computed as to exclude the day on which such act was committed; hence, where the act of bankruptcy was committed October 20, 1898, the petition could properly have been filed February 20, 1899." In the opinion in that case,· Bradford, J., said: "Section 31 [of the present bankrupt act] provides that 'whenever time is enumerated by days in this act, . . the number of days shall be computed by excluding the first and including the last, unless,' &c. Section 5013 of the Revised Statutes provides that 'in all cases in which any particular number of days is prescribed by this act . . for the doing of any act, or for any other purpose, the same shall be reckoned, in the absence of any expression to the contrary, exclusive of the first and inclusive of the last day, unless,' &c. I am unable to perceive any distinction in meaning between the phrase, 'whenever time is enumerated by days in this act,' and 'in all cases in which any particular number of days is prescribed by this act.' In Dutcher v. Wright this rule was relied on as not inconsistent with, but applicable to, the computation of months. This could only have been done on the ground that the specification of a number of months from an event was equivalent to an enumeration of the days contained in those months, as applied to a given case. Whatever force was given to section 5013 in Dutcher v. Wright must be accorded to section 31 in the present case."

It will be seen that, according to the decision in the Dutcher case, when the point to be ascertained is whether or not an assignment of his property by an insolvent debtor was made within four months *before* the filing of a petition in bankruptcy against him, the computation must be made backward from the latter event, excluding the date when it occurred; while, according to the ruling in the Stevenson case, when the point to be determined is whether or not the petition in bankruptcy has been filed within four months *after* the commission of an act of bankruptcy, the computation must be made forward from the day on which such act was committed, excluding that day. In each case, the day constituting the terminus a quo, or point from which the time was to be reckoned, was excluded, which was, technically, the proper way to make the computation; but it is evident that the result reached, in each instance, would have been the same if the day constituting the terminus a quo had been included and the day constituting the terminus ad quem, or point to which the time was to be reckoned, had been excluded. In the Dutcher case, while it was held that the computation, in that case, should be made exclusive of the day the petition in bankruptcy was filed, the opinion of the court shows that the practical result would be the same if the computation were made inclusive of that day and exclusive of the day the act of bankruptcy was committed. In Richards *v.* Clark, 124 Mass. 491, it was held that an attachment made on September 9, 1876, was made "within four months next preceding" the commencement of proceedings in bankruptcy by a petition filed on January 9, 1877. So in Cooley *v.* Cook, 125 Mass. 406, it was held that, "under the U. S. Rev. Sts. § 5013, the four months next preceding the commencement of proceedings in bankruptcy, an attachment made within which is dissolved by § 5040, are to be reckoned exclusive of the first day, and, if the last day falls on Sunday, exclusive of that also." There the attachment was made Saturday, February 10, 1877, at 1 p. m., and the petition filed on Monday, June 11, 1877, at 12 m. The court said the attachment was within four months next preceding the filing of the petition.

The purely technical error which the court committed, in the case under consideration, was in applying the rule for the computation of time, applicable in a case where the point to be determined is whether or not a petition in involuntary bankruptcy was filed within

four months after the commission of an act of bankruptcy, to a case in which the question to be decided was whether or not an assignment of his property by an insolvent debtor was made within four months before a petition in bankruptcy was filed against him. For the reasons which we have given, this error was perfectly harmless to the plaintiff in error, and, therefore, afforded no ground for the grant of a new trial.

When an act of bankruptcy has been committed and is followed by the filing of a petition in bankruptcy, within four months after the commission of such act, the court has the power to appoint a trustee to receive, collect, and take charge of the effects of the bankrupt, including those which he may have illegally transferred within the period of four months before the filing of the petition. It would be a remarkable anomaly if by adopting different methods of computing time it could be shown that a petition in bankruptcy had been filed within four months after a person, by making an illegal assignment or transfer of his property, had committed an act of bankruptcy, and yet that this act of bankruptcy had been committed more than four months before such petition was filed. The result of such an anomaly would be that the party could be lawfully adjudged a bankrupt, because he had illegally transferred his property and a petition in bankruptcy had been filed against him within four months thereafter; but the trustee appointed by the court could not recover this property or its value from the transferee thereof, because the transfer of the same occurred four months before the petition in bankruptcy was filed. If in such a case the act of bankruptcy consisted in the transfer of his entire property by the bankrupt, the whole purpose of the law in reference to involuntary bankruptcy would be defeated; for there would be nothing for the trustee to receive or collect.

3. As no material error was committed at the trial, and the verdict was supported by sufficient testimony, no reason for setting it aside appears.

*Judgment affirmed.　All the Justices concurring, except Lewis, J., absent.*