In re Robert WOLF, Alleged Debtor.

SID KUMINES, INC., Plaintiff,

v.

Robert WOLF, Defendant.

Bankruptcy No. 79–1913–L.
Adv. No. A80–0734.

United States Bankruptcy Court,
D. Massachusetts.

July 30, 1981.

Alan Garber, Mason & Martin, Boston, Mass., for plaintiff.

Robert Robinson, Widett, Slater & Goldman, Boston, Mass., Frederick B. Hayes, III, White, Inker, Aronson, Connelly & Norton, Boston, Mass., for Robert Wolf.

## MEMORANDUM RE VALIDITY OF ATTACHMENT

THOMAS W. LAWLESS, Bankruptcy Judge.

The issue presented to the Court in this proceeding is the validity of an attachment obtained by the plaintiff, Sid Kumins, Inc. ("Kumins"). The attachment is challenged as a voidable preference pursuant to § 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b).

On November 19, 1980 (as amended December 17, 1980), Kumins filed a complaint in this Court seeking a determination that its real estate attachment obtained on the property of the alleged debtor, Robert Wolf ("Wolf"), was valid and perfected.[1] At the pre-trial hearing on the complaint held on December 17, 1980, all parties present including Kumins, Wolf, and the petitioning creditor, Harbor National Bank of Boston ("Harbor") agreed that the question of the validity of Kumins' attachment involved a straight issue of law, that an agreed statement of facts would be submitted to the Court, and that the Court should determine the validity of attachment on the basis of the agreed statement.

On February 11, 1981, an agreed statement of facts was submitted to the Court by Kumins and Harbor. The relevant facts as stipulated are as follows, and I so find.

Kumins commenced an action against Wolf in the First District Court of Southern Middlesex on June 28, 1979, and on the same date that Court approved, *ex parte*, a real estate attachment. The attachment on Wolf's property in Framingham, County of Middlesex, Massachusetts was made by the Middlesex Deputy Sheriffs on July 17, 1979. This attachment was recorded the following day, July 18, 1979, in the Middlesex South Registry of Deeds. Thereafter, on October 16, 1979, an involuntary petition under Chapter 7 was filed against Wolf.

The parties further agreed that the determination of the validity of Kumins' attachment depends solely upon the Court's resolution of the following issue:

Was the attachment of Sid Kumins, Inc., a voidable preference within the provisions of 11 U.S.C.A. § 547(b)(4)(A) as having been made "on or within 90 days before the date of the filing of the petition..."?

Harbor contends that since Kumins' real estate attachment was made on July 18, 1979, a date on or within 90 days the filing of the petition, the attachment is voidable as a preference pursuant to § 547(b). Kumins, on the other hand, maintains that the attachment was made 90 days prior to the filing, namely on, July 17, 1979, and thus is not vulnerable as a preference under that section.

On March 2, 1981, Harbor filed a motion for summary judgment on the issue presented to the Court in the parties' agreed statement. The parties have submitted briefs in support of their respective positions.

Section 547(b) of the Bankruptcy Code[2] sets forth the five elements that must be

---

1. The complaint also sought relief from the automatic stay so that Kumins could pursue its claim against Wolf in state court. After the hearing held on December 17, 1980, at which no party objected to the lifting of the stay, the Court granted that portion of the plaintiff's complaint.

2. Section 547(b), in pertinent part, provides:
   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor...

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent,
(4) made...
   (A) on or within 90 days before the date of the filing of the petition; ...
(5) that enables such creditor to receive more than such creditor would receive if...

established in order to avoid a transfer[3] of property as a preference. In this proceeding, however, as noted above, the sole issue involves whether the attachment was made within the time period set forth in the statute, i. e. "on or within 90 days before the date of the filing of the petition."

The initial issue to be resolved is how that 90-day period is to be computed, and concomitantly what are the critical dates demarcating that period in this proceeding.

■ Rule 906(a) of the Rules of Bankruptcy Procedure provides that for the purpose of computing the time periods within which acts in bankruptcy proceedings are required to be done, the methodology set forth in Rule 6(a) of the Federal Rules of Civil Procedure is to be followed. Rule 6(a) provides:

> (a) *Computation.* In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, *the day of the act, event, or default from which the designated period begins to run shall not be included. The last day of the period shall be included* unless it is a Saturday, Sunday, or a legal holiday . . . .
>
> [Emphasis added].

This rule governs the computation of time periods not only after the commencement of a bankruptcy proceeding, but also for computing time periods prior to the commencement of a case. *See,* Advisory Committee's Notes to Rule 906(a). Therefore, the methodology set forth in Rule 6(a) governs the determination of the 90-day period for purposes of § 547(b). 4 *Collier on Bankruptcy,* ¶ 547.28 at 547–109 (15th ed. 1981); *In re Grimaldi,* 6 B.C.D. 241, 3 B.R. 533 (Bkrtcy.D.Conn.1980).

■ Application of the method of computation contained in Rule 6(a) requires that in calculating the 90-day period for purposes of § 547, one of the terminal dates of the statutory period is to be excluded (i. e., the date of the "act" or "event" from which the designated 90-day period begins to run) and that the other terminal date is to be included. While there exists some disagreement among authorities whether it is the date the petition is filed or the date of the attachment which is to be considered the "event" and thereby excluded from the calculation,[4] all agree that one of the terminal dates is to be counted and the other excluded. In these circumstances, regardless whether the date of the involuntary petition or the date of the attachment is excluded, in either case the critical 90th day is July 18, 1979.[5] Thus, if it is determined that Kumins' attachment was made prior to July 18, 1979, the attachment is not vulnerable as a preference, whereas if it is found that the attachment was made on or after

---

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

**3.** The parties here do not dispute the fact that the attachment obtained by Kumins is considered a transfer for purposes of § 547. This Court concurs with that analysis. *See,* 11 U.S.C. § 101(40); *In re George E. Eichorn,* 11 B.R. 81 (Bkrtcy.1981 Gabriel, B. J.).

**4.** When confronted with the issue of computing statutory periods for purposes of the preference section, several courts have excluded the date of the filing of the petition from the calculation, and included the date of the transfer. *See, e. g., In re Grimaldi,* 6 B.C.D. 241, 3 B.R. 533 (Bkrtcy.D.Conn.1980); *In re B&M Contractors, Inc.,* 2 B.R. 110, (Bkrtcy.N.D.Ala.1979). Others, however, disagree and exclude the date of

the transfer and include the date of filing. *See, e. g., Bell v. West,* 44 F.2d 161 (4th Cir. 1930); 4 *Collier on Bankruptcy,* ¶ 547.28 at 547–109 (15th ed. 1981). As noted in the Memorandum all authorities agree that one of the terminal dates is to be counted and the other excluded. This Court notes that while the result is the same whichever date is excluded, it agrees with those courts which have excluded the date of the petition from the computation of the 90-day period. In light of the statutory language contained in § 547(b)(4)(A) (that a transfer of property may be avoided which is made "on or within 90 days before the date of the filing) the event beginning the designated 90-day period would appear to be the date of filing and therefore that date should be excluded.

**5.** In fact, the parties while disagreeing as to which of the terminal dates should be excluded agree that the critical 90th day is July 18, 1979.

that date, the attachment falls within the 90-day period and is voidable.

The determination of when the attachment was made for purposes of § 547 requires the application of both bankruptcy and state law. *In re Vodco Volume Development Co., Inc.*, 567 F.2d 967, 970 (10th Cir. 1977). Section 547(e)(2) of the Bankruptcy Code defines generally when a transfer (or herein an attachment) is made. That section provides:

(2) For purposes of this section ... a transfer is made___

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

Thus, in the circumstances of this case this section presents two further issues to be resolved: (1) at what time did Kumins' attachment become effective as between the "transferor" (Wolf) and the "transferee" (Kumins); and (2) whether Kumins' attachment was perfected within 10 days of the date it became effective.

■ The effective date of the attachment between Wolf and Kumins is governed by state law. *In re Lyon Carpet Co.*, 25 F.2d 509, 511 (D.Mass.1928). The applicable statute in Massachusetts is G.L. c. 223 § 66:

*Attachment; time of taking effect.* If the copy of the writ is deposited as afore-

said, [recording the attachment in the appropriate Registry of Deeds], within three days after the date when the attachment was made the attachment shall take effect from the time it was made, otherwise, from the time when the copy is so deposited; but attachments of land ... shall in no case be valid against purchasers in good faith and for value, other than parties defendant, before the time when the copy is deposited as aforesaid...

In this proceeding, as noted above, the parties have agreed that the attachment of Wolf's property was made by Middlesex Deputy Sheriffs on July 17, 1979, and that the next day, July 18,[6] the attachment was recorded ("deposited") in the Middlesex South District Registry of Deeds. Therefore, since the attachment was recorded within three days after the attachment was made, pursuant to § 66, the attachment became effective between the parties on the date it was made, *i. e.* July 17.[7]

■ Next, under § 547(e)(2)(A), the Court must determine whether the attachment was perfected within 10 days of July 17. This determination in turn requires an examination of § 547(e)(1)(A) which defines when an attachment is perfected. This section states, in relevant part:

(e)(1) For purposes of this section___

6. Since all the significant dates occurred during 1979 references to dates hereinafter will include only the month and day.

7. On this point the Court rejects Harbor's contention that since the attachment involved real estate, the effective date of the attachment under G.L. c. 223 § 66 was July 18 and not July 17. Harbor points out that under that section an attachment involving real estate is invalid against a good faith purchaser for value until it is recorded. According to Harbor, therefore, since a trustee in this proceeding pursuant to § 544(a) of the Bankruptcy Code would have the rights and powers of such a good faith purchaser, Kumin's attachment would not be valid until it was recorded on July 18, and thus is not effective until that date.

Harbor's analysis here is incorrect and is based upon a misreading of the relevant statutory provisions. Contrary to Harbor's contention G.L. c. 223 § 66 does not set forth a separate procedure for determining when an attachment

of real property becomes effective between the parties to that transaction. *In re Lyon Carpet Co.*, 25 F.2d at 512; *Coffin v. Ray*, 42 Mass. 212 (1840). Rather, the section simply excepts the class of good faith purchasers from the effect of unrecorded attachments. Thus, here the statute makes clear that since the attachment was recorded within three days of the date it was made, its effective date as between Wolf and Kumins is the day the attachment was made. Furthermore, Harbor misconstrues the nature of § 544(a) of the Bankruptcy Code in its suggestion that under that section a trustee is granted the status of a good faith purchaser at some point 90 days prior to the date that the petition is filed. However, the language of that section explicitly states that a trustee is granted that status "as of the commencement of the case" and not as of July 18 as suggestesd by Harbor. Therefore, even if its interpretation of § 66 were otherwise correct, its argument here is nevertheless unconvincing.

(A) a transfer of real property ... is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; ...

Thus, the section in essence provides that as far as real property is concerned a transfer, or an attachment, is perfected when it is valid against a bona fide purchaser. Again in this instance state law determines when the interest of an attaching creditor is valid against a bona fide purchaser. Section 66 of G.L. c. 223 is the applicable statutory provision and, as quoted above, explicitly provides that in order to be valid against a bona fide purchaser, the attachment must be recorded. Since Kumins' attachment was recorded on July 18, the attachment was perfected on that date for purposes of § 547(e)(1)(A). The attachment having been perfected within 10 days of the date when the attachment became effective, pursuant to § 547(e)(2), the attachment is considered to have been "made" on the same date it took effect, namely July 17. Consequently, since July 17 is the 91st day before the date the involuntary petition was filed, Kumins attachment is outside the scope of the statutory preference provision.

Therefore, the Court finds that the real estate attachment obtained by the plaintiff was not made "on or within the 90-day period" contained in § 547(b)(4)(A) and thus is not avoidable as a preference under that section.