**In re Lars Dowell LARSON, Debtor.**

**Lars Dowell LARSON, Plaintiff,**

**v.**

**OLYMPIC FINANCE CO., a Utah corporation, Defendant.**

**Bankruptcy No. 81–00097.
Civ. No. 81P–0128.**

United States Bankruptcy Court, D. Utah.

June 25, 1982.

---

Harriet E. Styler, Salt Lake City, Utah, for debtor.

Berk W. Washburn, Walker, Hintze & Washburn, Inc., Salt Lake City, Utah, for Olympic Finance Co.

## MEMORANDUM DECISION

RALPH R. MABEY, Bankruptcy Judge.

The issues arising in this case concern the circumstances under which pre-bankruptcy wage garnishments in Utah effect preferential transfers under 11 U.S.C. § 547(b).

### FACTS

Lars D. Larson (debtor) filed a petition for relief under Chapter 7 on January 13, 1981. Olympic Finance Company (Olympic), a judgment creditor, had garnished his wages four times. Olympic served the first garnishment on October 6, 1980, more than 90 days before the petition was filed. Within 90 days before debtor's filing, Olympic secured and executed a judgment on this garnishment. Olympic served and completed the second and third garnishments within the 90 day period. The fourth writ was served within the 90 day period but Olympic later released it. In all, Olympic received $208.72 from the three completed garnishments.

Debtor filed this action to recover the money under Sections 547(b) and 522(h). The parties filed cross-motions for summary judgment and submitted the matter for decision.

### DISCUSSION

Under Section 522(h) of the Bankruptcy Code, a debtor "may avoid a transfer of property . . . to the extent that the debtor could have exempted such property under subsection (g)(1) . . . if the trustee had avoided such transfer, if (1) such transfer is avoidable by the trustee under section . . . 547 . . . of this title . . . and (2) the trustee does not attempt to avoid such transfer." Section 522(g)(1) permits the debtor to exempt property the debtor could have exempted under Section 522(b) which is recovered by the trustee if the transfer was not voluntary and the debtor did not conceal the property. The parties agree that the garnishments caused involuntary transfers, that the debtor did not conceal the property, and that if the trustee had recovered the

**266**

wages from Olympic, the debtor could have exempted them.[1] The trustee did not attempt to avoid the transfers.

■ Debtor asserts that the trustee could have avoided the transfers under Section 547(b). Olympic disagrees, arguing that the transfers fall within the exception to the trustee's avoiding powers made by Section 547(c)(5) for transfers of a perfected security interest in a receivable. Olympic reasons that debtor's wages were receivables and that each garnishee execution perfected a security interest in the wages in favor of Olympic.

The Court declines to accept Olympic's analysis of Section 547(c)(5). That Section does not apply in this case because Olympic did not have a security interest. The term 'security interest' as used in the Bankruptcy Code is defined as a "lien created by agreement." Section 101(37). Garnishment liens are not created by agreement. Section 547(c)(5) was intended not to protect garnishment liens but to cover consensual liens in inventory and receivables. H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 374 (1977). S.Rep.No.95–989, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

Whether the transfers were preferential depends upon whether the facts of this case satisfy the relevant requirements of Section 547(b): "The trustee may avoid any transfer of property of the debtor (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3)

made while the debtor was insolvent; (4) made (A) on or within 90 days before the date of the filing of the petition; . . . and (5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under Chapter 7 . . . ; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of (title 11)."

Debtor's complaint alleges facts sufficient to satisfy the requirements of Section 547(b). Olympic stipulates to the facts alleged but denies that the debtor was insolvent when the transfers were made. Olympic contests the law which fixes the time of transfer for preference analysis.

Olympic contends that the debtor was not insolvent when the transfers were made because he "had regular employment with a high income, by which (he) could have paid off his creditors." Debtor argues that his schedules of assets and liabilities show that he was insolvent when the transfers were made; he also relies on the presumption of insolvency raised by Section 547(f).

■ The debtor is presumed to have been insolvent on the 90th and during the 90 days immediately preceding the date of filing of the petition for relief. 11 U.S.C. § 547(f). Olympic bears the burden of producing evidence to rebut this presumption. Rule 301 Federal Rules of Evidence. Olympic's assertions in its memorandum that the debtor was not insolvent are not evidence and are insufficient to overcome the pre-

1. On January 13, 1981, when debtor filed his petition, he claimed exemptions pursuant to 11 U.S.C. § 522(d). The federal exemptions under Section 522(d) were broad enough to allow debtor to exempt unpaid wages. *See* Sections 522(d)(1) and (5). On May 12, 1981, the Utah Exemptions Act became effective. Sections 78–23–1 to 78–23–15 Utah Code Annotated, 1953, *as amended. Section 78–23–15 of the* Act provides that "no individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of Section 522 of the Bankruptcy Reform Act (Public Law 95–598), except as may otherwise be expressly permitted under this chapter." This Act, of course, does not apply to the debtor in this case. But because

Utah has "opted out" of the federal exemption scheme, the exemption which was available to the debtor in this case is no longer applicable in Utah. This Court has ruled that Utah law, specifically Sections 78–23–1 *et seq.* and 70B–5–105, Utah Code Annotated (the Utah Exemptions Act and the Utah Uniform Consumer Credit Code), provides for no bankruptcy exemption for pre-petition wages. *This Court* has also ruled that 15 U.S.C. §§ 1671 *et seq.* provide no bankruptcy exemption for pre-petition wages. *See In re Lane,* Bankr. No. 81–03205 (transcript of hearing) (D. Utah, February 2, 1982) and *In re Collins,* Bankr. No. 81–03200 (transcript of hearing) (D. Utah, February 2, 1982).

sumption of insolvency raised by Section 547(f). The Court must therefore find that the debtor was insolvent when the transfers were made.

The only issues remaining for decision are whether the transfers made by the garnishments were made on or within 90 days before the date of the filing of the petition and whether the transfers enabled Olympic to receive more than it would have received if they had not been made and if Olympic had been paid under the distributive provisions of the Code.

The debtor's petition was filed on January 13, 1981. October 15, 1980 is the final day of the 90 day period.[2] Whether the transfers were made on the 90th or within 90 days before the filing of the petition is governed by Section 547(e). Application of Section 547(e) in this case, however, requires reference to Utah law on the effect of garnishment proceedings.

Under Utah law, several distinct transfers of interests in property within the meaning of Section 101(40) occur during a wage garnishment proceeding.[3]

Garnishment procedure is governed by Rule 64D of the Utah Rules of Civil Procedure, which includes the following steps:

1. The creditor obtains a money judgment against the debtor. Rule 64D(a)(ii).

2. The clerk of the state court issues a writ of garnishment. Rule 64D(d)(ii).

3. The writ is served on the debtor's employer. Rule 64D(f).

   If the writ is accompanied by interrogatories and a $3.00 fee, the employer must file verified answers with the court within ten days. Rule 64D(e)(ii) and (h).

   The garnishment applies to all wages earned during the pay period in which the writ is served. Rule 64D(e)(iii).

   If more than one writ is served, the writ first served has priority. Rule 64D(e)(iii).

---

2. Rule 6(a) of the Federal Rules of Civil Procedure, applicable here through Bankruptcy Rule 906(a), provides that "in computing any period of time prescribed ... by ... any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or a legal holiday." As noted by the Court in *Sid Kumines, Inc. v. Wolf (In re Wolf)*, 13 B.R. 167, 169, 4 C.B.C.2d 1229, 7 B.C.D. 1286, (Bkrtcy.D.Mass.1981), "there exists some disagreement among the authorities whether it is the date the petition is filed or the date of the attachment [or, in this case, the garnishment] which is to be considered the 'event' and thereby excluded from the calculation." Collier takes the position that "the day the alleged transfer is effected will not be counted," citing *Bell v. West*, 44 F.2d 161 (4th Cir. 1930) and *Whitley Grocery Co. v. Roach*, 115 Ga. 918, 42 S.E. 282 (1902). 4 Collier on Bankruptcy ¶ 547.28 at 547–109 (15th ed. 1981). This view is not persuasive because of the language of Section 547(b)(4)(A), which indicates that the event from which the 90 day period begins to run is the date of the filing of the petition. Under Rule 6(a), the date of the filing of the petition should be excluded and the 90 day period calculated by beginning with the day before the filing of the petition as the first day and counting back until the 90th day. *Accord, In re Wolf, supra; Grimaldi v. John A. Ruell, Inc. (In re Grimaldi)*, 3 B.R. 533, 6 B.C.D. 241, (Bkrtcy.D.Conn.1980); *In re B & M Contractors, Inc.*, 2 B.R. 110, (Bkrtcy.N.D.Ala. 1979). Whether the petition date or the transfer date is excluded makes a difference in some cases. In this case if the petition date is excluded, transfers on October 15 would fall within the 90 day preference period. If a transfer occurred on October 15 and that date is excluded, the transfer would fall outside the preference period. The parties have referred to October 13 as the 90th day. This may be based on the erroneous assumption that the relevant period is three months rather than ninety days.

3. References in this section to the time transfers occur in wage garnishment proceedings is limited to Utah law. The question of when transfers are deemed to have been made under Section 547(e) is analyzed later in this opinion.

   Section 101(40) provides that "transfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an interest in property, including retention of title as a security interest." Congress intended that the definition of transfer be as broad as possible. H.R. Rep.No.95–595, 95th Cong., 1st Sess. 314 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess. 27 (1978).

268

268

# 268

The writ commands the employer to withhold non-exempt wages and to pay exempt wages to the debtor on payday. Rule 64D(e)(ii).

4. The employer files with the court answers to the interrogatories. Rule 64D(h). Thereupon, the employer is relieved from further liability in the proceedings unless the answer is successfully controverted. *Id.*

5. After the answers are filed, the creditor or the debtor may, within ten days, file with the court and serve upon the employer a reply. The matters at issue, if any, are tried and a judgment is entered against the employer ordering delivery of non-exempt wages to a sheriff or constable. Rule 64D(i) and (j).

6. The creditor obtains a writ of execution on the garnishee judgment and delivers it to a sheriff or constable, who serves the writ on the employer. Rules 64D(j) and 69.

7. The employer delivers the money to the officer. Thereafter, the money is delivered to the creditor.

If the creditor fails, within sixty days from the filing of the employer's answers, to secure a garnishee judgment and execute on the non-exempt wages held by the employer, the writ is automatically released and the employer must give the withheld wages to the debtor. Rule 64D(u).

In this case, Olympic served its garnishments, obtained garnishee judgments, and received the non-exempt wages after executing on its garnishee judgments. Each garnishment resulted in at least two transfers within the meaning of Section 101(40).

■ The first transfer occurred upon the service of each writ of garnishment: Olympic obtained, under Utah law, a lien on all of the debtor's non-exempt wages accruing during the pay period in which the writ was served.[4] Liens created in this manner are judgment liens within the meaning of Sections 101(27)[5] and 101(28)[6] because Olympic obtained, by legal process, a charge against and an interest in the attached wages to secure payment of its judgment. Upon service of each writ, the debtor lost his right to receive the attached wages on payday. Rule 64D(e)(i) and (iii). At the same time, Olympic acquired the right to have the attached wages withheld from the debtor and to receive them, upon order of the Court, in satisfaction of its judgment.

The transfer of a judgment lien did not strip the debtor of all interest in the wages subject to the lien; until a garnishee judgment was entered and executed, the debtor retained a reversionary right in the impounded wages. Under Rule 64D(u), after sixty days from the date the debtor's employer files answers to the creditor's interrogatories, if the creditor fails to secure and execute upon a garnishee judgment, the writ is automatically released, the lien is discharged, and the employer must pay the attached wages to the debtor. Additionally, under Rule 64D(i) the debtor had the right to contest the employer's answer to the garnishment interrogatories by filing a reply within ten days after service of the answer. The debtor also had the right to appear and be heard on the issues raised by his reply.

---

4. Utah Rule 64D was adopted in its present form on November 1, 1972. Case law interpreting the former garnishment rules indicates that service of a writ of garnishment in Utah creates a lien on the attached property in favor of the garnishing creditor. *Dayton v. Free*, 49 Utah 221, 162 P. 614, 615 (1916) (a garnishing creditor obtains "a lien, coupled with the right to appropriate so much (of the property garnished) as may be necessary to satisfy his judgment."); *Graham v. Hidden Lake Copper Co.*, 53 Utah 230, 178 P. 64, 66 (1919) (property garnished becomes liable from the date of service of the writ); *Bristol v. Brent*, 35 Utah 213, 99 P. 1000 (1909) (the purpose of pre-judgment

garnishment is to hold the property as security for any judgment that may be recovered). The 1972 changes in the garnishment statute do not appear to require a different rule.

5. Section 101(27) provides that " 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."

6. Section 101(28) provides that " 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation."

A second transfer of property interests of the debtor occurred, under Utah law, when Olympic successfully executed on the debtor's wages; thereafter, the debtor had no further interest in the attached wages which were subsequently delivered to Olympic.[7]

All of the elements of Section 547(b) have been established except for those contained in subsections (4) and (5). The Court must determine whether any transfers were made on or within 90 days before the filing of the petition and if so, whether such transfers enabled Olympic to receive more than Olympic would have received under the distributive provisions of the Code.

Section 547(e) specifies when, for purposes of Section 547, a transfer of property of the debtor other than real property is made. Such a transfer is made "(A) at the time such transfer *takes effect between the transferor and the transferee*, if such transfer is perfected at, or within 10 days after, such time; (B) at the time such transfer is *perfected*, if such transfer is perfected after such 10 days; or (C) *immediately before the date of the filing of the petition*, if such transfer is not perfected at the later of—(i) the commencement of the case; and (ii) 10 days after such transfer takes effect between the transferor and the transferee." Section 547(e)(2) (emphasis supplied).

The timing rules in Section 547(e)(2) are modified by Section 547(e)(3), which provides that "for purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred." The timing rules of Section 547(e) depend upon three points in time: the time the transfer takes effect, the time the transfer is perfected, and the time the debtor acquires rights in the transferred property.

## THE FIRST WRIT OF GARNISHMENT

■ The first writ of garnishment was issued on October 3, 1980. It was served on the debtor's employer on October 6. All of this occurred before October 15, the ninetieth day. A garnishee judgment was entered on November 5. The same day, a writ of execution was issued on the judgment. The writ of execution was served on November 17 and, thereafter, $68.88 was paid to Olympic.

1. *The Transfer of a Garnishment Lien Under the First Writ.*

a. *Time of taking effect.*

The transfer of a garnishment lien in favor of Olympic took effect upon service of the writ on October 6. At the moment of service, Olympic obtained a lien which was effective against both the debtor and the debtor's employer.[8]

b. *Time of perfection.*

The transfer of this garnishment lien was perfected upon service of the writ on October 6. Section 547(e)(1)(B) provides that a transfer of property other than real property is perfected "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." In Utah, if more than one writ of garnishment is served, the writ first served

---

7. Another transfer of property interest of the debtor occurred, under Utah law, at the moment Olympic obtained each garnishee judgment. Upon judgment, the debtor lost his right to contest the employer's answer. This loss is a transfer within the meaning of Section 101(40) because the debtor parted with an interest in property: his right to contest the employer's answer.

In *Woodman v. L. A. Olson Co., (In re Woodman),* 8 B.R. 686, 3 C.B.C.2d 798, Bankr.L.Rep. (CCH) ¶ 67,822 (Bkrtcy.W.D.Wis.1981), the Court recognized that a debtor's right to defend a garnishment action is an equitable interest in the property withheld under the garnishment.

Avoidance of this transfer, however, is not at issue in this case.

8. This proceeding does not present either the question of what is transferred upon service of a writ of garnishment or the question of the relative priorities of the parties in cases where the employer asserts a right of setoff in the wages. *See* Rules 64D(n), 64D(p), 64D(q), Utah Rules of Civil Procedure; *compare Warner Development v. World of Toys and Hobbies, Inc.,* Civ.Pro. No. 80–0455 (*In re World of Toys and Hobbies, Inc.,* Bankr. No. 80–00261) (D. Utah Sept. 30, 1981 transcript of ruling).

has priority. Rule 64D(e)(iii). After Olympic served its writ on October 6, no creditor on a simple contract could have acquired a judicial lien on the wages attached by the first garnishment superior to Olympic's interest.

#### c. 547(e)(3).

Under the "time of taking effect" and the "time of perfection" rules alone, the transfer of the garnishment lien would be deemed to have been made on October 6, outside the 90 day period. Accordingly, the garnishment lien would be immune to avoidance under Section 547(b). This result, however, is precluded by Section 547(e)(3), which provides that for purposes of Section 547, a transfer is not made until the debtor has acquired rights in the property transferred.

The debtor acquired no interest in his wages until he earned them.[9] Thus, no transfer could have taken place under Section 547(e) until the wages were earned. This changes the result which would otherwise obtain under Utah law. Under Utah law if the pay period in which the writ was served extended both before and after October 15, the 90th day, Olympic had as of October 6, the date of service of the writ, a valid, perfected lien on all wages earned during that period. But under Section 547(e)(3), no transfer of a judgment lien to Olympic could occur until the wages were earned. Thus, on October 6, a transfer of a judgment lien to Olympic was made, but only of wages the debtor had earned as of October 6.

After October 6, as the debtor earned wages, they became subject to Olympic's garnishment. Olympic acquired a lien on each new unit of wages as it was earned. Thus, Olympic's garnishment resulted in a series of transfers.

All wages earned before October 15 were included in or "transferred" under Olympic's lien outside the 90 day period. These transfers cannot be avoided.

But wages earned, and thus transferred under Olympic's lien on or after October 15 were transferred on the 90th day or within 90 days before the filing of the petition. As to the lien on these wages, Section 547(b)(5) is satisfied. A no-asset report was filed and this case was closed without a distribution to unsecured creditors. The transfer of these wages under Olympic's lien would have allowed Olympic to receive a greater portion of its claim than Olympic would have received in distribution. The lien held by Olympic on wages earned on or after October 15 is avoidable.

#### 2. The Transfer of Payment Under The First Writ.

A payment of $68.88 was made to Olympic on or after November 17 pursuant to the first writ of garnishment. This payment was made, within the meaning of Section 547, within 90 days before the date of the filing of the petition. While this transfer by execution occurred within the 90 day period, insofar as it transferred wages earned and already attached before October 15, it cannot be avoided.

Therefore, the $68.88 payment must be divided into two parts. The first part includes amounts withheld from the debtor's wages which were earned before October 15 on which Olympic had a valid garnishment lien. This lien was fully secured by funds earned before October 15. The transfer of these funds in satisfaction of this valid lien is not preferential because Olympic received

---

9. The cases to date have held that a debtor does not acquire rights in wages until they are earned. *Poutre v. Emery (In re Emery)*, 13 B.R. 689, 690, (Bkrtcy.D.Vt.1981); *Brengle v. Wilmington Trust Co. (In re Brengle)*, 10 B.R. 360, 361, (Bkrtcy.D.Del.1981); *Cox v. General Electric Credit Corp. (In re Cox)*, 10 B.R. 268, 272, 4 C.B.C.2d 456, 7 B.C.D. 733, Bankr.L.Rep. (CCH) ¶ 67,969 (Bkrtcy.D.Md.1981); *Woodman v. L. A. Olson Co. (In re Woodman)*, 8 B.R. 686, 687, 3 C.B.C.2d 798, Bankr.L.Rep. (CCH) ¶ 67,-822 (Bkrtcy.W.D.Wis.1981); *Mayo v. United Services Automobile Association (In re Mayo)*, 19 B.R. 630, 4 C.B.C.2d 1298, 8 B.C.D. 791, (E.D.Va.1981); *Evans v. CIT Financial Services, Inc. (In re Evans)*, 16 B.R. 731, 8 B.C.D. 799, (Bkrtcy.N.D.Ga.1982); *Eggleston v. Third National Bank in Nashville (In re Eggleston)*, 19 B.R. 280 (Bkrtcy.M.D.Tenn.1982).

no more than it was entitled to receive under the Code. Thus, as to this transfer, Section 547(b)(5) is not satisfied and the transfer may not be avoided under Section 547(b). *See Trimble v. McCoy Brothers, Ltd. (In re Hawkins Manufacturing, Inc.)* 11 B.R. 512, 7 B.C.D. 939 (Bkrtcy.D.Colo. 1981).[10]

The second part of the $68.88 payment includes money withheld from wages earned on or after October 15. Because Olympic's lien on these wages is avoidable, the transfer of these funds represents a payment on an unsecured claim. A payment on a judgment unsecured by a judgment lien, made within 90 days before the filing of a petition in bankruptcy is voidable as a preferential transfer where all the elements of Section 547(b) are present. *See Thrifty Supermarket, Inc. v. Panax of Florida, Inc. (In re Thrifty Supermarket Inc.)*, 6 B.C.D. 214 (Bkrtcy.S.D.Fla.1980); *Deel Rent-A-Car, Inc. v. Levine (In re Levine)*, 6 B.R. 54, 57 (Bkrtcy.S.D.Fla.1980). Because this was a no-asset case, the transfer satisfies Section 547(b)(5) and is avoidable.[11]

## THE SECOND AND THIRD GARNISHMENTS

The second and third garnishments may be treated together because they were issued and served and judgments on them were entered and executed within the 90 day period. Liens created by these garnishments were transfers made within 90 days before the filing of the petition which, on the facts of this case already discussed, are avoidable under Section 547(b). Payments made in satisfaction of these avoidable liens are also avoidable transfers. Under the second and third garnishments, Olympic received $139.84. All transfers to Olympic of interests in this money are avoidable.

## CONCLUSION

Judgment creditors in Utah should be mindful that wage garnishments served within the 90 day preference period will, in most cases, cause avoidable preferential transfers. Wage garnishments served outside the 90 day preference period may also cause preferential transfers where they attach wages earned within the 90 day period.[12]

---

10. Analogous are cases holding that installment payments to a fully secured creditor are not preferential transfers because section 547(b)(5) is not satisfied. *See, e.g., Barash v. Public Finance Corporation*, 658 F.2d 504 (7th Cir. 1981).

11. The analysis employed in cases involving garnishment of property other than earnings for personal services such as *Moratzka v. Bill Simek Distributing, Inc. (In re Brinker)*, 12 B.R. 936, 7 B.C.D. 1299, (Bkrtcy.D.Minn.1981) is inapplicable here. In *Brinker*, a judgment creditor perfected a garnishment lien on money in the debtor's bank account outside the 90 day period. Within the 90 day period, the creditor levied on and received payment of the money. The court ruled that no preferential transfer occurred: "In order to avoid a post judgment garnishment as a preference, the date of service of the garnishee summons must be within the 90 days preceding the filing of a petition." 12 B.R. 936, 7 B.C.D. 1301. This statement does not apply here. In this case, although the garnishment was served outside the preference period, it reached wages in which the debtor had no rights until the 90 day period had begun, thus causing a preferential transfer. In *Brinker* the debtor had rights in the garnished money outside the 90 day period. *See also Butz v. Bancohio National Bank (In re Toriello)*

13 B.R. 425 (Bkrtcy.S.D.Ohio 1981) (execution on securities and money market certificate outside the 90 day period); *McIntosh v. Bank of Salt Lake*, 24 Utah 2d 245, 469 P.2d 1016 (1970) (attachment lien created outside the preference period).

12. In states with garnishment laws similar to Utah's, similar results have been reported. For example, *see Brengle v. Wilmington Trust Co. (In re Brengle)*, 10 B.R. 360 (Bkrtcy.D.Del. 1981); *Cox v. General Electric Corp. (In re Cox)*, 10 B.R. 268, 4 C.B.C.2d 456, 7 B.C.D. 733, Bankr.L.Rep. (CCH) ¶ 67,969 (Bkrtcy.D.Md. 1981); *Mayo v. United Services Automobile Association (In re Mayo)*, 19 B.R. 630, 8 B.C.D. 791 (E.D.Va.1981); *Evans v. CIT Financial Services, Inc., (In re Evans)*, 16 B.R. 731, 8 B.C.D. 799 (Bkrtcy.N.D.Ga.1982); *Cobb v. Household Finance Corp. (In re Cobb)*, 17 B.R. 687 (Bkrtcy.E.D.Tenn.1982); *Eggleston v. Third National Bank in Nashville (In re Eggleston)*, 19 B.R. 280 (Bkrtcy.M.D.Tenn.1982). *See also In re Pierce*, 6 B.R. 18, 2 C.B.C.2d 148 (Bkrtcy.N. D.Ill.1980); *Poutre v. Emery (In re Emery)*, 13 B.R. 689 (Bkrtcy.D.Vt.1981) (Post-petition wages); *Baum v. United Virginia Bank (In re Baum)*, 15 B.R. 538, 5 C.B.C.2d 745, Bankr.L. Rep. (CCH) ¶ 68,454 (Bkrtcy.E.D.Va.1982) (all garnishment proceedings took place within the

Based on the foregoing memorandum decision, IT IS ORDERED:

1. Olympic's liens on wages earned on or after October 15 and all payments on these liens are avoided under Section 547(b).

2. Debtor may have judgment against Olympic for the portion of the $68.88 payment made under the first garnishment attributable to wages earned on or after October 15 and for the $139.84 paid to Olympic under the second and third garnishments.

90 day period); *In re Schweitzer*, 17 B.R. 39 (Bkrtcy.W.D.Ky.1981) (all garnishment proceedings took place within the 90 day period).

In states where the garnishment laws operate differently from those of Utah, the results have varied. For example, in *Woodman v. L. A. Olson Co., Inc., (In re Woodman)*, 8 B.R. 686, 3 C.B.C.2d 798, Bankr.L.Rep. (CCH) ¶ 67,822 (Bkrtcy.W.D.Wis.1981), a judgment creditor served garnishments outside the 90 day period. Within the 90 day period, the debtor's employer withheld wages under the garnishments and made two payments into state court. The court held that the transfers of garnishment liens to the creditor upon service of the garnishments were not preferential because they were not made within the 90 day period. The debtor argued that in addition to the transfers of garnishment liens, other transfers took place when the employer made payments to the state court. The court agreed that the payments were transfers, but ruled that these transfers were not avoidable under section 547 because they did not involve property of the debtor. Under Wisconsin law, once the garnishments were served, the debtor had no legal interest in the wages. Although the debtor retained an equitable interest in the wages "based on his right to defend the garnishment action," this interest had lapsed by the time the payments were made because the debtor failed to file an answer within the statutory time period. 8 B.R. 688. Under Utah law, the result would have been different because even if the debtor fails to file a reply to the garnishee's answers within the statutory time period, the debtor still retains the right, under Utah Rule 64D(u), to recover the wages if the creditor fails, within sixty days, to obtain and execute a garnishee judgment.

In *Riddervold v. Saratoga Hospital*, 647 F.2d 342 (2d Cir. 1981), a judgment creditor served an income execution on the debtor's employer outside the 90 day period. Within the 90 day period wages were withheld by the employer and paid to the creditor. The debtor asserted that the payments were preferential transfers. The court held that the payments were not preferential because during the 90 day period the debtor had no interest in the wages transferred under the income execution. The court recognized that section 547(b) only covers transfers of property of the debtor. Under New York law, after service of an income execution the debtor has "no property or interest in property subject to the levy which can be transferred." 647 F.2d 346. Because of the effect of New York law, Section 547(e)(3) was inapplicable. That section comes into play only if the debtor acquires rights in the property transferred. In *Riddervold*, the debtor never had rights in the property transferred. Any apparent conflict between *Riddervold* and the decision reached here and in other cases may be attributed to differing state law on whether a debtor who earns wages after a garnishment has been served has any interest in wages withheld under the garnishment. See *Evans v. CIT Financial Services, Inc. (In re Evans)*, 16 B.R. 731, 8 B.C.D. 799 (Bkrtcy.N.D.Ga.1982) (distinguishing *Riddervold* on the same grounds). *See also In re Lawrence*, 18 B.R. 360 (Bkrtcy.E. D.N.Y.1982) (distinguishing *Riddervold's* facts even though New York law applied); *James Talcott Factors, Inc. v. Blatter (In re Blatter)*, 16 B.R. 137 (Bkrtcy.S.D.N.Y.1981) (applying New York law as interpreted in *Riddervold*).