**In re MAILBAG INTERNATIONAL, INC., Debtor.**

**Daniel MEISTER, Trustee for Mailbag International, Inc., Plaintiff,**

v.

**STATE NATIONAL BANK OF CONNECTICUT, Defendant.**

**Bankruptcy No. 5–80–00563.
Adv. No. 205–5–82–0047.**

United States Bankruptcy Court,
D. Connecticut.

April 8, 1983.

---

Roy W. Moss, Zeisler & Zeisler, P.C., Bridgeport, Conn., for plaintiff.

Mark I. Fishman, Bridgeport, Conn., for defendant.

## MEMORANDUM AND ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

This matter is before the court on the defendant's motion for summary judgment.

### I.

On August 1, 1980, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On September 16, 1980, the bankruptcy case was converted to a case under Chapter 7 and on September 22, 1980, the plaintiff was appointed trustee of the debtor's estate. Thereafter, on January

27, 1982, the plaintiff instituted suit to avoid a prepetition transfer from the debtor to the defendant, alleging that the transfer was preferential within the meaning of 11 U.S.C. § 547.[1] On January 17, 1983, the defendant, pursuant to Bankruptcy Rule 756,[2] moved for summary judgment "on the basis that the alleged preferential transfer did not occur on or within 90 days before the date of the filing of the petition, as required by section 547 . . ."[3]

The undisputed facts relevant to the defendant's motion follow.[4] The subject transfer was made by a check in the amount of $50,000.00 drawn by the debtor to the defendant on the debtor's account at the First Stamford Bank & Trust Company (First Stamford). First Stamford certified the check at the debtor's request on April 30, 1980. On May 1, 1980, First Stamford debited the amount of the check against the debtor's account. On May 2, 1980, the check was delivered to the defendant, and on May 5, 1980, the check was paid. Finally, as noted, the debtor filed its petition on August 1, 1980.

## II.

The disposition of the defendant's motion hinges upon two principal questions of law. First, when does a transfer by certified check occur within the meaning of 11 U.S.C. § 547? Second, how is the ninety day preference period computed?

## A.

### *Time Of Transfer*

■ The Bankruptcy Code broadly defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property . . ." 11 U.S.C. § 101(40). The time of transfer for purposes of preference analysis is governed by section 547(e)(2). That section provides in pertinent part: ". . . a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time . . ."

A transfer of personal property "is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B). State law must be consulted to resolve questions of perfection. 4 *Collier on Bankruptcy* ¶ 547.46[1], at 547–136 (15th ed. 1982).

■ Here both parties recognize that in the case of an ordinary check, the transfer occurs for purposes of section 547 when the check is paid. *Grogan v. Chesebrough-Ponds, Inc.*, 25 B.R. 521, 9 B.C.D. 1395 (Bkrtcy.E.D.Mich.1982); *In re Super Market Distributors Corp.*, 25 B.R. 63, 9 B.C.D. 1155 (Bkrtcy.D.Mass.1982); *In re Ardmore Sales Co., Inc.*, 22 B.R. 911 (Bkrtcy.E.D.Pa. 1982); *In re Mindy's, Inc.*, 17 B.R. 177 (Bkrtcy.S.D.Ohio 1982); *In re Sportsco, Inc.*, 12 B.R. 34, 7 B.C.D. 1025 (Bkrtcy.D. Ariz.1981); *In re Duffy*, 3 B.R. 263, 6 B.C.D. 88 (Bkrtcy.S.D.N.Y.1980). *But see In re Garland, Inc.*, 19 B.R. 920, 8 B.C.D. 1357 (Bkrtcy.E.D.Mo.1982). That result ob-

---

1. 11 U.S.C. § 547 provides in pertinent part
   (b) . . . [T]he trustee may avoid any transfer of property of the debtor—
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
   (A) on or within 90 days before the date of the filing of the petition . . . and
   (5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under Chapter 7 of this title;

   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

2. Bankruptcy Rule 756 makes Rule 56 of the Federal Rules of Civil Procedure applicable in adversary proceedings.

3. Defendant's Motion For Summary Judgment.

4. The facts are drawn from a stipulation by the parties and exhibits attached thereto, as well as, Defendant's Response To Request For Admissions, dated January 12, 1983.

tains because "[a] check itself does not vest in the payee any title to or interest in the funds held by the drawee bank." *In re Duffy, supra,* at 265, 6 B.C.D. at 89, citing U.C.C. § 3–409. *See also* Conn.Gen.Stat. § 42a–3–409. Furthermore, it has been observed that until the payee receives payment, the transfer is unperfected under section 547(e)(1)(B). *Grogan v. Chesebrough-Ponds, Inc., supra,* 25 B.R. 521, 9 B.C.D. at 1397; *In re Super Market Distributors Corp., supra,* at 1156.

The defendant contends, however, that when, as here, a check is certified, the transfer is complete at the time of certification or, in any event, no later than delivery of the certified check to the payee-defendant.

The essence of certification is that the bank becomes directly liable on the drawer's check, assuring the holder that it will be paid when presented. Significantly, certification removes the funds from the reach of executing creditors under Connecticut law. Section 52–367a of the Connecticut General Statutes, which governs executions upon bank deposits, incorporates Conn.Gen. Stat. § 42a–4–303. Section 42a–4–303(1) in turn provides in pertinent part that legal process "comes too late . . . if . . . received or served . . . after the bank has done any of the following: (a) accepted or certified the item . . ."

■ Here the check was certified on April 30, 1980, and the debtor's account was debited on May 1, but delivery of the certified check did not occur until May 2, 1980. Prior to delivery, the defendant was not a holder of the check and had no right to the funds, and, as in the case of an ordinary check prior to payment, no funds were assigned to the payee-defendant. *Umbsen v. Crocker First National Bank of San Francisco,* 33 Cal.2d 599, 203 P.2d 752, 754 (1949); *In re Williamson's Will,* 264 App.Div. 615, 616, 35 N.Y.S.2d 1016, 1018 (1942); *Bath-*

gate v. Exchange, 199 Mo.App. 583, 205 S.W. 875 (1918); *Beuhler v. Galt,* 35 Ill.App. 225, 227 (1889). *See also Atwood v. Atwood,* 86 Conn. 579, 86 A. 29 (1913) (absence of delivery fatal to payee's claim on instrument). Although the above cited cases were decided prior to the promulgation of the Uniform Commercial Code, the necessity of delivery remains under current law. An instrument is not issued until "first delivery . . . to a holder or a remitter." Conn.Gen.Stat. § 42a–3–102(1)(a). In other words, prior to delivery, the payee defendant was not entitled to a claim on the drawer's funds that were debited to meet the certified check. *See Clinger v. Clinger,* 503 P.2d 363, 11 U.C.C.Rep. 1026 (Colo.App. 1972).

■ The defendant's argument that the transfer must be fixed at the earlier date of certification based on the definition of perfection under section 547(e)(1)(B) is not persuasive for two reasons. First, certification which is equated with acceptance under Conn.Gen.Stat. § 42a–3–411(1) [5] is not operative until delivery under Conn.Gen.Stat. § 42a–3–410(1).[6] Thus, the certification on April 30 was not fully effective until May 2. Second, and more importantly, on April 30, there was no transfer to perfect. Under section 547(e)(2), which determines the time of transfer, the question of perfection only becomes relevant after it has been determined that a "transfer [has taken] effect between the transferor and the transferee." As noted, the act of certification alone transfers nothing to the named payee.

■ Upon delivery on May 2, however, the defendant not only had a right to claim payment on the check, but also the debtor's funds on deposit were immunized from legal process by the fully effective certification. Accordingly, I conclude that the transfer in question occurred on May 2, 1980 pursuant to 11 U.S.C. § 547(e)(2)(A).

---

5. Conn.Gen.Stat. § 42a–3–411 states in pertinent part: "Certification of a check is acceptance . . ."

6. Conn.Gen.Stat. § 42a–3–410(1) provides: "Acceptance is the drawee's signed engage-

ment to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification.

*Cf. Larimore v. Weyland & Son, Inc.,* 16 B.R. 201 (Bkrtcy.M.D.Fla.1981) (cashier's check considered payment at time of delivery).

### B.

### *Computation Of Preference Period*

Having determined that the transfer occurred on May 2, 1980 and the petition was filed on August 1, 1980, I must next count the days comprising the preference period. The defendant initially contends that section 547(b)(4)(A)[7] is "self-contained and complete"[8] and thus precludes the application of Bankruptcy Rule 906(a), which adopts Rule 6 of the Federal Rules of Civil Procedure[9] for the computation of time in a bankruptcy case. The defendant further contends that if Fed.R.Civ.P. 6 is applicable, then the computation should begin from the date of the transfer. The plaintiff, on the other hand, argues that Fed.R.Civ.P. 6 is applicable and the days should be counted backwards from the date the petition was filed.

If Fed.R.Civ.P. 6 is ignored, then the transfer on May 2, 1980 fell outside the preference period.[10] The same result is reached if Rule 6 is applied and the days are counted forwards. However, if Rule 6 is applied and a backward count is employed, then the ninetieth day (May 3) would fall on a Saturday and because of the provision in Rule 6 relating to Saturdays, Sundays and legal holidays, the preference period would extend to May 2.

In *In re Grimaldi,* the bankruptcy court in this district concluded that Bankruptcy Rule 906(a) was applicable to the computation of the preference period prescribed by section 547. 3 B.R. 533, 6 B.C.D. 241 (1981). *Accord, Harbor National Bank of Boston v. Sid Kumins, Inc.,* 696 F.2d 9 (1st Cir.1982); *In re Larson,* 21 B.R. 264 (Bkrtcy.D.Utah 1982); *In re Utility Stores, Inc.,* 12 B.R. 170 (Bkrtcy.N.D.Ill.1981); 4 *Collier On Bankruptcy* ¶ 547.28 at 547–109 (15th ed. 1982); 2 *Norton Bankr. L. & Prac.* § 32.11 at Part 32—page 35 (1981). The court is unaware of any decision which holds that Bankruptcy Rule 906(a) does not apply to section 547.

While the applicability of Bankruptcy Rule 906(a) is well established, "there is some disagreement as to which of the two dates [the date of the petition and the date of the transfer] is to be included and which excluded" pursuant to Rule 6(a).[11] *Harbor v. National Bank of Boston v. Sid Kumins, Inc., supra,* 696 F.2d at 10. Compare *Bell v. West,* 44 F.2d 161 (4th Cir.1930) (excluding date of the transfer) with *In re B & M Contractors, Inc.,* 2 B.R. 110 (Bkrtcy.N.D. Ala.1979) (excluding date of the petition).[12] I believe that the position adopted in *Bell v. West* wherein the court began the time computation from the date of the transfer

---

**7.** See footnote 1 *supra.*

**8.** Defendant's Reply Memorandum In Support Of Motion For Summary Judgment at 3.

**9.** Fed.R.Civ.P. 6(a) provides in pertinent part
(a) Computation. In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday.

**10.** May 3 through July 31 constitutes a full ninety day period exclusive of the terminal days May 2 and August 1.

**11.** Although several decisions under the Code have either implicitly or explicitly approved a backward count, see, e.g., *In re Grimaldi, supra; In re Larson. supra,* 21 B.R. at 267 n. 2, the direction of the count was not at issue.

**12.** Both *Bell v. West* and *B & M Contractors* were decided under the former Bankruptcy Act. The predecessor of Bankruptcy Rule 906(a) was found in Act § 31. That section provided
Computation of Time. Whenever time is enumerated by days in this Act, or in any proceeding thereunder the number of days shall be computed by excluding the first and including the last, unless the last fall on a Sunday or holiday, in which event the day last included shall be the next day thereafter which is not a Sunday or a holiday.

should be followed under Code § 547(b)(4)(A). *See* 4 *Collier on Bankruptcy, supra;* 2 *Norton Bankr.L. & Prac., supra.*

Section 547 provides little basis for deciding from which point to compute the preference period. In pertinent part, that section merely states that certain transactions made on or within ninety days before the filing of the petition are avoidable as preferences. Rule 6(a), however, keys the computation to the happening of, among other things, an act. In this proceeding, the focus of the court is drawn to a transfer. That is the act from which the "designated period of time begins to run." Moreover, the language of Rule 6(a) is consistent with the application of a forward count. One does not usually think of a period of time as beginning to run backwards.

Additionally, a forward count satisfies the purpose of the rule that is designed to govern the time in which something must be done. Under section 547 a transfer may be avoided, assuming all other elements are satisfied, if within ninety days of the transfer, the debtor or petitioning creditors file a petition. Indeed, a forward count is reinforced by the very extension provision which the plaintiff requests the court to apply. If a transfer happens one day and the eighty eighth day thereafter falls on a Friday, a forward count would assure that the debtor or petitioning creditors could file a petition the following Monday and invoke section 547. Counting backwards, however, any extension would serve no useful purpose, because no act is to be done at the end of the extended time.

In sum, a forward count from May 2, 1980 is appropriate, and I accordingly find that the subject transfer occurred outside of the preference period prescribed by section 547(b)(4)(A). Since the absence of any of the elements constituting a preferential transfer is fatal to the trustee's claim,[13] the defendant's motion for summary judgment should be, and hereby is, granted.

---

**13.** *In re Thomas Farm Systems, Inc.,* 18 B.R. 541, 542 (Bkrtcy.E.D.Pa.1982).