**In Matter of NELSON CO., Debtor.**

**NELSON COMPANY, Appellant,**

v.

**COUNSEL FOR the OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Creditor,**

v.

**AMQUIP CORPORATION, James J. O'Connell, Jr., Esq., Assistant U.S. Trustee, Trustee.**

**Nos. 91–1695, 91–1696.**

United States Court of Appeals, Third Circuit.

Argued Jan. 28, 1992.

Decided March 26, 1992.

proved by the Court of Common Pleas for Delaware County, Pennsylvania, were ambiguous. The consent order was instrumental in determining the date of the alleged preferential treatment because if the prior confessed judgment was stricken by the consent order, then the newly entered judgment was a preference which could be avoided by the debtor pursuant to 11 U.S.C. § 547(b). Exercising our plenary standard of review over the legal question of whether the terms of the agreement were ambiguous, we find that the district court was correct in its determination that two crucial paragraphs were in conflict. Because the debtor was the author of the consent agreement and order, the district court properly interpreted the ambiguities against the debtor. Consequently, we will affirm the order of the district court.

Myron A. Bloom (argued), Robert M. Bovarnick, Adelman Lavine Gold and Levin, Philadelphia, Pa., for appellant.

Jonathan E. Rich (argued), Martin J. King, Cordes, King & Rich, Newton, Pa., for appellee.

Before: MANSMANN, HUTCHINSON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In these appeals from the district court's decision affirming a bankruptcy court order, we are faced with a novel issue: whether the 90 day avoidance period in 11 U.S.C. § 547(b) is to be calculated by counting *backward* 90 days from the filing of the petition in bankruptcy or by counting *forward* 90 days from the date of the event sought to be avoided. Because the purpose behind the Bankruptcy Code's 90 day preference avoidance is best served by counting backward from the date of the filing of the petition, we conclude that the district court did not err in this regard.

In addition, we are faced with the question of whether the district court erred by concluding that the terms of a consent agreement reached by the parties and ap-

### I.

The historical facts are not in dispute and arise out of the business relationships between the Nelson Company and AmQuip Corporation. AmQuip Corporation provided labor and materials to Nelson Company for the B.P. Oil Company rehabilitation at B.P. Oil's Delaware County facility. When payment apparently was not forthcoming, AmQuip filed a complaint in confession of judgment against Nelson in the Court of Common Pleas for Delaware County on or about February 28, 1989. The judgment was entered on March 6, 1989.

On March 10, 1989, Nelson filed a Petition to Open or Strike the Judgment pursuant to Pennsylvania Rules of Civil Procedure. Discovery was taken as to the facts surrounding the Petition to Open or Strike. A hearing was held in the Court of Common Pleas for Delaware County on May 22, 1989. Counsel for Nelson requested that there be an extension or continuance because the parties had reached a tentative agreement of settlement on the confessed judgment.

On June 1, 1989, counsel for Nelson forwarded a copy of the settlement agreement to AmQuip. Then, on June 5, before AmQuip could respond to the proposed agreement, Nelson filed a voluntary petition in

bankruptcy under Chapter 11, for a reorganization.

In July, 1989, AmQuip filed its proof of claim in Nelson's bankruptcy filing asserting that the March 6, 1989 judicial lien served as its secured claim. Then, in August, Nelson Company filed an application with the bankruptcy court for removal of the Delaware County action. The Delaware County action was removed to the District Court for the Eastern District of Pennsylvania and was subsequently referred to the bankruptcy court.[1]

AmQuip and Nelson finally resolved their differences as to the confession of judgment by entering into a consent agreement on August 30, 1989. The essential terms of the agreement were set forth in the order of consent attached to the agreement. It stated in pertinent part:

1. The confessed judgment entered on or about February 28, 1989 is hereby stricken.

2. Judgment is entered in favor of Am-Quip and against Nelson in the principal amount of $291,712.46 plus interest at 18% from 30 days after the date of each invoice to March 1, 1989, and at the legal rate of post-judgment interest thereafter.

The agreement was consented to by the counsel for the unsecured creditors, who joined in petitioning the bankruptcy court to approve the agreement and lift the automatic stay so the consent order could be approved and signed by the Delaware County court. The agreement was ultimately filed on December 28, 1989.

While the original confession of judgment resulted in a judgment for AmQuip of $349,734.32 including 18% interest and attorney's fees, the consent order reduced AmQuip's judgment to $291,712.46 plus 18% interest until March 1, 1989 and 6% interest afterward. Moreover, AmQuip waived attorney's fees in the consent agreement.

AmQuip entered its first amended proof of claim on February 1, 1990. Nelson responded on March 16 by filing a complaint against the claim, seeking to avoid it as a pre-petition preferential transfer. AmQuip then filed its second amended proof of claim on April 26, 1990 in order to correct certain errors in its first amended proof. AmQuip listed its claim against Nelson in the amount stipulated in the consent order.

A hearing was held in June of 1990 on Nelson's challenge to AmQuip's claim. There counsel for Nelson presented evidence as to Nelson's valuation of a claim it had against a third party but Nelson did not present evidence as to the intent of the parties with regard to the consent order. Nelson presented additional information to the bankruptcy court in July when it requested to reopen the record. This evidence consisted of statements from the president of Nelson Company as to the value of assets Nelson Company would have in a hypothetical Chapter 7 liquidation. No request was made to reopen the record to produce parol evidence as to the intent of the parties in drafting the consent order.

In deciding this matter of the consent order, the bankruptcy court found an ambiguity in its terms and thus had to reconcile the language dealing with striking the February 28, 1989 confessed judgment and the allowance of "post-judgment" interest from March 1 onward. The bankruptcy court concluded that the consent order did not "strike" the confessed judgment, but rather, modified it.

Next, having decided that the judicial lien arising from the entry of judgment was a transfer as of March 6, 1989, the date of the entry of the confessed judgment, the court had to determine whether the transfer occurred within 90 days of the filing of the petition in bankruptcy which would constitute a pre-petition preferential transfer. The court reasoned that in order to determine whether the transfer fell with-

---

1. Nelson Company was uncertain if it should file for removal in the district court or the bankruptcy court, and filed for removal in both. Consequently, the adversarial proceeding had two docket numbers: one for the district court and one for the bankruptcy court. When the stipulation to permit the Delaware County Court of Common Pleas to enter the consent order was filed, the bankruptcy court clerk marked the bankruptcy proceeding as settled and closed. Appendix at 91–92.

in 90 days of the filing of the petition, it would count backward from the date of filing. March 6, 1989, fell on day 91 from the filing of the petition in bankruptcy. Therefore, the entry of the confession of judgment did not fall within the statutory 90 day period and it did not meet the requirement for a pre-petition preferential transfer avoidance.

After the bankruptcy court issued its memorandum, Nelson moved for reconsideration pursuant to Bankruptcy Rules 9023 and 9024, which mirror Fed.R.Civ.Proc. Rules 59 and 60. The bankruptcy court denied Nelson's motion for reconsideration. In its memorandum, the court concluded that Nelson had not provided any new evidence or compelling argument to grant reconsideration.

Nelson appealed to the United States District Court for the Eastern District of Pennsylvania. In a published opinion, *Nelson Co. v. AmQuip Corp.*, 128 B.R. 930 (E.D.Pa.1991), the district court affirmed the holding and the reasoning of the bankruptcy court. Nelson appealed.[2]

## II.

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 and § 158(d) since this is an appeal from the final order of the district court acting in bankruptcy. We exercise the same review over the district court's decision that the district court may exercise over the bankruptcy court. Thus, the findings of fact made by the bankruptcy court may be reversed only for clear error. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988). Legal questions are subject to plenary review. *Id.*

## III.

The consent order is pivotal to the resolution of this appeal because both the bankruptcy court and the district court determined the date of the judicial lien or transfer from the terms of the consent order. Once the date of the transfer was decided, both courts then had to decide whether the transfer occurred within the 90 day preferential treatment period.

■ We turn to the language of the consent order and initially apply plain meaning to its terms to see if any ambiguity surfaces. Whether a contract is clear and unambiguous is a question of law for the court. *Mellon Bank, N.A. v. Aetna Business Credit*, 619 F.2d 1001, 1011 (3d Cir. 1980). If the terms are ambiguous, the fact finder must interpret the terms. *Id.*

■ The terms of the consent order are as follows:

1. The confessed judgment entered on or about February 28, 1989 is hereby stricken.

2. Judgment is entered in favor of AmQuip and against Nelson in the principal amount of $291,712.46 plus interest at 18% from 30 days after the date of each invoice to March 1, 1989, and at the legal rate of post-judgment interest thereafter.

Paragraph 1 of the order provides that the confessed judgment entered on or about February 28, 1989 is "stricken". Yet, paragraph 2 refers to post-judgment interest commencing after March 1. It would appear that paragraph 2 recognizes a judgment that paragraph 1 purports to strike or void.

"Ambiguity is defined as: [i]ntellectual uncertainty, the condition of admitting to two or more meanings, of being understood in more than one way." *Mellon Bank*, 619 F.2d at 1011. Therefore, on its face, the consent order presents an ambiguity. Consequently, neither the district court nor the

---

**2.** This case involves the consolidation of two appeals. One appeal is the debtor's appeal from the bankruptcy court's initial ruling concerning the debt; the second is an appeal from the bankruptcy court's denial of the debtor's motion for reconsideration. Because the issues overlapped, the district court consolidated the two appeals and we did likewise.

During the pendency of this appeal, the bankruptcy court appointed an interim trustee. In the supplemental briefs which it filed, its arguments mirror those of the debtor. Consequently, we do not need to address the arguments of the trustee separately.

**1264**

bankruptcy court erred by concluding that the order was ambiguous.

■■■ Once it determined that an ambiguity existed, the bankruptcy court, as the fact finder, was charged with the task of determining the intent of the parties. *Fox v. United States Dept. of Housing*, 680 F.2d 315, 319 (3d Cir.1982) (necessity to discern meaning of ambiguity transforms question into one of fact to be resolved by the fact finder). To do so required the bankruptcy court to look at all submissions and evidence adduced at the June 4, 1990 trial. Despite the bankruptcy court's request for parol evidence with regard to the intent of the parties when drafting the consent order, Nelson did not present any evidence until after the bankruptcy court's decision, thus it was not an abuse of discretion for the bankruptcy court not to have reopened the matter. Nelson had full opportunity to present its evidence in a timely fashion and chose not to do so.

With respect to the evidence timely presented to the bankruptcy court, court reviewed all of the evidence at its disposal and concluded that the consent order was part of a settlement agreement and was intended to be a modification of the confessed judgment which Nelson had opposed. In other words, AmQuip agreed to reduce the amount of its claim from approximately $350,000 to $292,000, with interest being calculated at post judgment rates only after entry of the judgment and with a waiver of attorneys fees in return for Nelson withdrawing its challenge to the confessed judgment. Any reading of paragraph 1 as providing for the *striking* of the February 28 judgment, as opposed to modifying it, would render the language in paragraph 2 surplusage.[3] Courts are loath to read any language as insignificant, but rather, attempt to read the contract as a whole giving standard meaning to all language. *Mellon*, 619 F.2d at 1011, and *Fox*, 680 F.2d at 320.

Recalling that our standard of review permits us to reverse only if the district court's findings of fact were clearly erroneous, we cannot say that the bankruptcy court was clearly erroneous in finding that the consent order intended to modify the confessed judgment and permit AmQuip to retain its secured lien, albeit at a lower amount.

■ Nelson contends the bankruptcy court erred additionally by charging it as the drafter of the consent agreement and order. Because the draft of the consent order addressed to AmQuip for execution came from counsel for Nelson, the bankruptcy court correctly concluded that Nelson's counsel was the drafter of the agreement. Under Pennsylvania law "doubtful language is construed most strongly against the drafter." *Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507, 510 (1986). Copies of the cover letter which accompanied the consent agreement and order from Nelson's counsel, *see* App. 54 and App. 71, support the bankruptcy court's findings that Nelson's counsel was the drafter. Therefore, the bankruptcy court correctly read the ambiguity against Nelson.

### IV.

■ Based on its interpretation of the consent order, the bankruptcy court properly concluded that the judicial lien or property transfer occurred on March 6, 1989, when the confessed judgment was filed and docketed. Under Pennsylvania law, the entry of the judgment created a judicial lien against property owned by Nelson in the county where the judgment was filed. 42 Pa.C.S.A. § 4303.[4] In other words, Am-

---

**3.** Nelson takes the position that the parties intended to strike the March 6, 1989 judgment and enter into a new one as of June 1, 1989, the date it submitted the consent order to AmQuip for signature. There was no plausible reason for AmQuip to agree to strike rather than modify its judgment. In addition, the evidence does not sustain Nelson's view. A little over a month after the filing of Nelson's petition in bankrupt-

cy, AmQuip filed its proof of claim listing the confessed judgment as a preferential, non-avoidable secured lien.

**4.** Section 4303 provides in pertinent part:
(a) Real property.—Any judgment or other order of a court of common pleas for the payment of money shall be a lien upon real property on the conditions, to the extent and

Quip's security interest in the property was perfected.

Nelson erroneously believes that the judgment was valid as of the date of the settlement agreement, not the date of entry of the confessed judgment. In so doing, it would appear that Nelson confuses its recognition of the debt with the perfection of the debt. Thus, Nelson argues that the agreement was reached on any of the following dates: between May 22 and June 1, 1989, on June 1, 1989, on August 30, 1989 (when AmQuip finally agreed to the settlement agreement) and on December 15, 1989, when the consent order was approved by the common pleas judge. Nelson's position is clearly contrary to law. The agreement, by itself, does not have the force of law as a lien, *i.e.*, the sheriff cannot execute a judgment based on the agreement. *See* 11 U.S.C. § 101(33) " 'lien' means charge against or interest in property to secure a payment of debt or performance of an obligation."

As we see it, at all times from March 6, 1989, on, AmQuip had a secured interest in Nelson's property in Delaware County by virtue of the entry and indexing of the judgment. Nelson filed a Petition to Open or Strike the Judgment entered on March 6. The dispute between the parties over the confessed judgment ended with the settlement agreement which was ultimately approved by the Court of Common Pleas of Delaware County in December, 1989. The consent order modified the March 6 judgment and reduced AmQuip's interest. However, at all times, AmQuip held a secured interest in Nelson's property. Therefore, the date when the agreement was reached and/or approved has no bearing on the date the transfer occurred.

■ Because Nelson filed a complaint in bankruptcy contending that AmQuip's secured claim was a preferential transfer which was avoidable under 11 U.S.C. § 547, the bankruptcy court had to determine whether the transfer fit the requirements of a voidable preferential transfer. Under 11 U.S.C. § 547(b):

> a trustee may avoid any transfer of an interest of the debtor in property
>
> > (1) to or for the benefit of a creditor;
> >
> > (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> >
> > (3) made while the debtor was insolvent;
> >
> > (4) made—
> >
> > > (A) on or within 90 days before the date of the *filing of the petition;* ...
> >
> > (5) that enables such creditor to receive more than such creditor would receive if—
> >
> > > (A) the case were a case under chapter 7 of this title;
> > >
> > > (B) the transfer had not been made
> > >
> > > . . .

11 U.S.C. § 547(b) (emphasis added).

The parties apparently agreed that factors 1, 2, and 3 were met here. Although there is some dispute by AmQuip as to factor 5,[5] it is the fourth factor dealing with the 90 day preference period which is hotly contested. Nelson argues that the 90 day period should be calculated by taking the date of the entry of the lien, March 6, 1989, and counting forward. Because day 90 falls on a Sunday, the following Monday, June 5, would constitute the 90th day. On the same day, June 5, Nelson's bankruptcy petition was filed. By this analysis, the transfer or entry of the judgment would fall within the preferential period and could be avoided. AmQuip counters that the starting point is the date of the filing of the petition, not the entry of the judgment, and urges that we then count backward.

---

with the priority provided by statute or prescribed by general rule adopted pursuant to section 1722(b) ... *when it is entered of record and indexed in the office of the clerk of the court of common pleas of the county where the property is situated,* ...
42 Pa.C.S.A. § 4303(a) (Purdon's 1981) (emphasis added).

**5.** AmQuip contends that by accepting payment of less money than AmQuip was entitled to in the confessed judgment under the consent order it was receiving less than it would have received were the case brought in bankruptcy under Chapter 7.

We have not previously addressed the issue of how to calculate the 90 day period.[6] Bankruptcy Rule 9006 dealing with the computation of time furnishes little guidance here, but rather, provides only that the day of the "event" shall not be counted in the computation of time.[7] The question then becomes: is the "event" the filing of the petition in bankruptcy or the transfer of property interest? Both the district court and the bankruptcy court concluded that the "event" was the filing of the petition in bankruptcy.

For several reasons, we conclude that the bankruptcy court and the district court properly determined the 90 day period by using the date of the filing of the petition in bankruptcy as the focal point. First, section 547 describes a "preference" as, *inter alia*, a transfer of interest which occurs "on or within 90 days *before the date of the filing of the petition.*" 11 U.S.C. § 547(b)(4)(A) (emphasis added). Thus, under section 547, the petition is the focal point, not the transfer.

Second, language in subsection (f) of section 547, which creates a presumption of insolvency, lends support. Subsection (f) provides:

> For the purposes of this section, the debtor is presumed to have been insolvent *on and during the 90 days immediately preceding the date of the filing of the petition.*

11 U.S.C. § 547(f) (emphasis added). It is only upon the filing of the petition in bankruptcy that the provisions of the Code come into effect. In other words, it is by operation of law *after* the filing of the petition that the debtor's rights, such as the automatic stay (11 U.S.C. § 362) or the avoidance of pre-petition preferential transfers 11 U.S.C. § 547(b), are created. As the Court of Appeals for the Eighth Circuit noted in *Smith v. Mark Twain National Bank*, 805 F.2d 278 (8th Cir.1986):

> A transaction which results in a voidable preference is lawful when made but subject to the possibility of being defeated by subsequent events. *It continues to be lawful unless it is followed by the filing of the bankruptcy petition within 90 days.* It continues to be lawful after that time unless the trustee elects to avoid it. Until the trustee exercises his election and makes a demand for transfer, the creditor's possession of the property is lawful.

*Smith*, 805 F.2d at 291 (emphasis added), *citing In re Independent Clearing House Co.*, 41 B.R. 985, 1015 (Bankr.D.Utah 1984) (prejudgment interest is awarded from time of demand for return not date of transfer). Because the filing of the petition in bankruptcy gives rise to the debtor's rights of avoidance and demand for return, it seems absurd to make the transfer the "event" or focal point rather than the date of the filing of the petition in bankruptcy.

Finally, as a matter of logic and certainty, it would be simpler to count back one

---

**6.** Our research indicates that no other court of appeals has yet to address this issue in a published opinion. The majority view of district courts and bankruptcy courts faced with the necessity of calculating the 90 day preferential period do so by calculating backward from the date of the filing of the petition in bankruptcy. *See In re J.A.S. Markets, Inc.*, 113 B.R. 193 (Bankr.W.D.Pa.1990); *In re Carl Subler Trucking, Inc.*, 122 B.R. 318 (Bankr.S.D.Ohio 1990); *In re Baker & Getty Financial Services, Inc.*, 98 B.R. 300 (Bankr.N.D.Ohio 1989); *In re Antweil*, 97 B.R. 63 (Bankr.D.N.M.1988), *aff'd* 111 B.R. 337 (D.N.M.1990); *In re White*, 64 B.R. 843 (Bankr.E.D.Tenn.1986); *Matter of Schneider*, 44 B.R. 961 (Bankr.W.D.Wisc.1984); *In re Enterprise Fabricators, Inc.*, 36 B.R. 220 (Bankr. M.D.Tenn.1983); *In re Larson*, 21 B.R. 264 (Bankr.D.Utah 1982); *In re Wolf*, 13 B.R. 167 (Bankr.D.Mass.1981), *aff'd sub nom Harbor National Bank of Boston v. Sid Kumins, Inc.* 696

F.2d 9 (1st Cir.1982); *In re B & M Contractors, Inc.*, 2 B.R. 110 (Bankr.N.D.Ala.1979).

A minority of courts have calculated the 90 day period from the date of the transfer. *See In re Wilmington Nursery Company*, 36 B.R. 813 (Bankr.E.D.N.C.1984); *In re Ford*, 34 B.R. 93 (Bankr.W.D.Va.1983), *aff'd* 53 B.R. 444 (W.D.Va.1984); *In re Fabmet Corp.*, 31 B.R. 414 (Bankr.W.D.N.Y.1983); *In re Mailbag International, Inc.*, 28 B.R. 905 (Bankr.D.Conn.1983); *In re Grimaldi*, 3 B.R. 533 (Bankr.D.Conn.1980).

**7.** Rule 9006 provides:

> In computing any period of time prescribed or allowed by these rules, by the local rules, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

time to find the preferential time frame rather than to count forward from each challenged transfer in order to determine whether the transfer fell within the 90 day period.

In offering its theory that the transfer is the focal point, Nelson relies exclusively on a Connecticut bankruptcy court opinion, *In re Mailbag International, Inc.*, 28 B.R. 905 (Bankr.D.Conn.1983). There the court reasoned: "[U]nder section 547 a transfer may be avoided, assuming all other elements are satisfied, if within ninety (90) days of the transfer, the debtor or petitioning creditors file a petition." 28 B.R. at 910. The bankruptcy court thus began with the premise that all transfers are voidable, rather than with the premise that all transfers are valid and only *become* voidable after the petition in bankruptcy is filed. We do not see that reasoning as being sound in light of the language in section 547(b).

We note instead that the bankruptcy court in *In re J.A.S. Markets, Inc.*, 113 B.R. 193 (Bankr.W.D.Pa.1990) found the language of section 547 to be instructive. Relying on the plain meaning of the clause "on or within 90 days before the date of filing of the petition," the bankruptcy court concluded that the count should be backward from the petition date. 113 B.R. at 198, *citing In re Antweil*, 97 B.R. 63 (Bankr.D.N.M.1988). In other words, the 90 day period is a "reachback" period, rather than a limitations period. *In re Waner Corp.*, 89 B.R. 751, 754 (Bankr.N.D.Ill. 1988), and *accord J.A.S. Markets, supra.*

Because the determination to count backward from the date of the filing of the petition is consistent with the language of section 547 and with the Bankruptcy Code, we adopt this method. Consequently, neither the district court nor the bankruptcy court erred by using the date of the filing of the petition as the focal point and calculating backward.

## V.

Nelson contends that the bankruptcy court erred by denying its motion for reconsideration on the belief that only newly discovered evidence was permissible on such a motion. Our review of the bankruptcy court's memorandum opinion shows that the bankruptcy court did more than just deny the motion on that ground. Indeed, the court addressed each of the arguments raised by both Nelson and the committee for unsecured creditors, as will we seriatim.

First, the bankruptcy court brought the ambiguity to the attention of the parties at the June 1990 hearing and requested additional evidence from the parties with regard to the intent of the consent order. Moreover, when Nelson requested that the record be reopened in order for it to introduce further evidence, the court complied, only to find Nelson introducing evidence on valuation. Where a party had ample opportunity to produce evidence at trial, and failed to do so, a court should not permit that party to relitigate the case by presenting evidence previously ignored by the party. *In re Leonetti*, 28 B.R. 1003 (E.D.Pa. 1983), *aff'd sub nom., Earl Realty, Inc. v. Leonetti*, 725 F.2d 667 (3d Cir.1983). Thus, neither the bankruptcy court nor the district court were required to give Nelson another opportunity to relitigate the same issue.

Second, the committee for unsecured creditors argued that it never would have agreed to the consent order if it had known that AmQuip would be retaining a secured claim. Yet, before the settlement agreement was agreed to by all parties, AmQuip had filed its proof of a secured claim in response to Nelson's petition in bankruptcy and never abandoned its claim. The debtor (Nelson Company) alludes to AmQuip's First Amended Claim as proof that AmQuip abandoned the claim as secured. We reject this argument in light of AmQuip's Second Amended Proof of Claim which states in ¶ 11 that the claim is a nonavoidable preference and secured claim. Thus, the facts of the record support AmQuip's contention that it intended to retain a secured claim.

Finally, if the committee had misinterpreted the consent order as reducing

AmQuip's claim to an unsecured claim, it was a unilateral mistake. Pennsylvania law clearly holds that, absent fraud, if there is a unilateral mistake as to the contract provisions, it is insufficient to invalidate the agreement. *Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507, 511 (1986).

Because the debtor failed to raise any new or material arguments to those it presented originally, the district court did not err by affirming the bankruptcy court's denial of Nelson's motion for reconsideration.

### VI.

Neither the bankruptcy court nor the district court erred by finding that the consent order was facially ambiguous. As the fact-finder, the bankruptcy court was charged with the task of ascertaining the intent of the parties. Based on the record, its finding that the consent order modified rather than dissolved the judgment entered on March 6, 1989, was not clearly erroneous. Therefore, AmQuip could only be reduced to the status of an unsecured creditor if the transfer could be avoided by the trustee under § 547(b).

Because the focal point of the calculation of the 90 day preference period is the date of the filing of the petition in bankruptcy and not the date of the transfer, it was proper for the bankruptcy court and the district court to calculate the period by counting backward to determine the preference period.

Finally, because Nelson and the unsecured creditor's committee's motion for reconsideration did nothing more than reiterate their previous arguments, it was not an abuse of discretion on the part of the bankruptcy court and the district court to deny the motion. Consequently, we will affirm the order of the district court.