Based on the above analysis, the bankruptcy court's dismissal of the involuntary petition should be affirmed.[5]

It is SO ORDERED.

**In re Frances LIND, Debtor.**

**Frances LIND, Plaintiff,**

**v.**

**Martin O'CONNELL, Defendant.**

Bankruptcy No. 95–50468.

Adversary No. 96–5194.

United States Bankruptcy Court,
D. Connecticut.

July 31, 1998.

**4.** On May 26, 1998, a separate motion panel of the BAP ("Motion Panel") granted a motion by Britain seeking inclusion of the "Memorandum of Allen–Main Associates Limited Partnership in Support of Dismissal of Involuntary Chapter 7 Petition" ("Trial Memorandum") in the record now before this Panel. Attached as an exhibit to the Trial Memorandum is a copy of the mortgage note but not the mortgage itself.

**5.** On May 27, 1998, the Motion Panel granted an order consolidating two appeals, No. 98–50019 ("Part I") and No. 98–50030 ("Part II") on the basis that both involved similar questions of fact

and law. On June 5, 1998, the parties agreed not to delay the oral argument of Part I herein. *See* Consent Order Staying Proceedings of Related Appeal, dated June 8, 1998. Part II, which has been stayed pending the issuance of the decision herein, involves an appeal of the award of attorney's fees to Allen–Main. This Panel concludes that Allen–Main's request for approval of costs and attorney's fees incurred subsequent to the entry of the bankruptcy court's order be determined in connection with the hearing on Part II of the consolidated appeal.

Janine M. Becker, Willinger, Shepro, Tower & Bucci, P.C., Bridgeport, CT, for Plaintiff.

Anthony E. Schwartz, Law Offices of Anthony E. Schwartz, Norwalk, CT, for Defendant.

## MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT

ALAN H.W. SHIFF, Chief Judge.

This adversary proceeding was commenced by the plaintiff/debtor to avoid an alleged preferential transfer under bankruptcy code §§ 522(g) and (h) and 547(b), and to recover and exempt funds under §§ 550, 522(i) and 522(b). The plaintiff filed the instant motion for summary judgment which is denied for the reasons that follow.

---

1. By letter dated April 11, 1997, the trustee informed the plaintiff's attorney that he would not pursue a preferential transfer action against the defendant as such an action would entail retaining counsel on a contingency fee basis and amounts recovered in such an action could properly be exempted by the debtor under § 522(g)(1). The trustee therefore indicated that

## BACKGROUND

On April 3, 1995, the plaintiff commenced this chapter 7 case. On November 29, 1996, she commenced this adversary proceeding to avoid two alleged preferential transfers and to recover and exempt $7,500.00 of the transferred funds. See §§ 522(g) and (h), 547, 550, and 522(b) and (i).[1] On March 20, 1997, the plaintiff filed this motion for summary judgment.

The determinative facts are not in dispute. On June 8, 1992, a Connecticut superior court entered judgment against the plaintiff and her husband for $67,804.24.[2] Thereafter, the state court issued two writs of execution to permit the defendant to levy on the plaintiff's bank account. The first was issued on September 19, 1994 (execution 1). On December 21, a sheriff served the execution papers on Fairfield County Savings Bank ("Fairfield Bank") and Chase Manhattan Bank of Connecticut ("Chase"). Chase charged $480.00 against the plaintiff's account pursuant to the writ. Fairfield Bank charged $9,364.80 to the plaintiff's account and paid that sum to the sheriff on January 5, 1995.

The second execution was issued on February 2, 1995 and served on Fairfield Bank and Chase on February 9 (execution 2). On that date, Chase charged $219.00 to the plaintiff's account. Fairfield Bank charged $803.44 to the plaintiff's account and paid that amount to the sheriff on March 1, 1995. The defendant concedes that the transfers of $1,022.44 pursuant to execution 2 occurred within the preference period and are properly avoidable, see Defendant's Memorandum of Law at 1–2, and that amount has been paid to the plaintiff. See tr. at 3.

## DISCUSSION

Rule 56(c) F.R.Civ.P., made applicable to bankruptcy by Rule 7056 F.R.Bankr.P., provides that summary judgement:

---

he would not assert any interest on behalf of the bankruptcy estate in any amounts recovered in this adversary proceeding.

2. The record of this case is silent as to the nature of the state court action.

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c) F.R.Civ.P. (West 1997).

There are no disputed issues of fact. The only dispute is whether the transfer of funds in connection with execution 1 was made within the preference period prescribed by § 547(b)(4). That section provides in relevant part:

(b)... [T]he trustee may avoid any transfer of an interest of the debtor in property—

   (4) made—

      (A) on or within 90 days before the date of the filing of the petition ....

11 U.S.C. § 547(b)(4)(A) (West 1997). In this case, the preference period reaches back 90 days from the April 3, 1995 petition date to January 3, 1995.

The bankruptcy code authorizes a debtor to avoid the transfer of property of the debtor under the following relevant provisions.

*Section 522(h)*

   The debtor may avoid a transfer of property of the debtor ... to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

      (1) such transfer is avoidable by the trustee under section ... 547 ... of this title ...; and

      (2) the trustee does not attempt to avoid such transfer.

*Section 522(g)*

   ... [T]he debtor may exempt under subsection (b) of this section property that the trustee recovers under section ... 550 ... of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

      (1) (A) such transfer was not a voluntary transfer of such property by the debtor; and

      (B) the debtor did not conceal such property....

*Section 522(i)*

   (1) If the debtor avoids a transfer ... under subsection ... (h) of this section, the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) of this section.

*Section 550(a)*

   ... [T]o the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover for the benefit of the estate, the property transferred... from—

      (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made....

*See also DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1250 (9th Cir.1995). There is no dispute here that all of the conditions imposed by the foregoing provisions have been satisfied. Accordingly, the plaintiff seeks to avoid the transfers resulting from execution I to the extent of § 522(b). *See Plaintiff's Motion for Summary Judgment. See also Plaintiff's Memorandum of Law at 6.*

■ The plaintiff contends that the transfers occurred within the preference period, *i.e.,* on January 5, 1995, the date of payment on the execution. *See tr.* at 3–4. The defendant argues that the transfers were outside of the preference period, *i.e.,* on December 21, 1994, the date the writ of execution was served on the banks. *Id.* at 7–8. The plaintiff has the burden of proving that the transfers were within the preference period. *See* 11 U.S.C. § 547(g).

The Supreme Court has stated that "[w]hat constitutes a transfer and when it is complete is a matter of federal law." *Barnhill v. Johnson,* 503 U.S. 393, 397–98, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (citation and internal quotation marks omitted). The

code broadly defines transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property ...." 11 U.S.C. § 101(54). The time of transfer for purposes of a preference analysis is governed by § 547(e). *See also Meister v. State National Bank of Connecticut (In re Mailbag International, Inc.),* 28 B.R. 905, 907 (Bankr.D.Conn.1983).

Section 547(e) provides in relevant part:

(e) (1) For the purposes of this section—

...

(B) a transfer of ... property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, ... a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time ...; [or]

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days ....

11 U.S.C. § 547(e) (West 1997). Under that statutory scheme, a two part analysis is employed to determine the date of the transfer. First, the date that the transfer is perfected is established, *see* § 547(e)(1). That date has been defined by the Supreme Court as the time when other creditors are foreclosed from obtaining a superior lien. As the Court

concluded, it is "[n]ot until the secured party actually performs the final act that will perfect its interest ... [that] other creditors [are] foreclosed conclusively from obtaining a superior lien. It is only then that they 'cannot' acquire such a lien." *Fidelity Financial Services, Inc. v. Fink,* — U.S. —, —, 118 S.Ct. 651, 654, 139 L.Ed.2d 571 (1998). Section 547(e)(2) then provides that the transfer is made at the time it takes effect, if it is perfected at or within 10 days after it takes effect, or the transfer is made at the time of perfection if the perfection is after the 10 day period.

■ In this case, the court must determine whether the transfers of funds from the plaintiff's bank accounts pursuant to execution 1 were perfected when the sheriff served the writ of execution or when he was paid. That determination is made by reference to the law of Connecticut. *See Barnhill v. Johnson, supra,* 503 U.S. at 398, 112 S.Ct. 1386 (citations omitted) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law"); *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law"); *Battery One–Stop Ltd. v. Atari Corp., (In re Battery One–Stop Ltd.),* 36 F.3d 493, 495 (6th Cir.1994) ("A more precise definition of 'perfection' is left to state law").

The procedure for executing on a judgment debtor's bank account is provided in C.G.S.A. § 52–367b.[3] *See also Fleet Bank*

3. Section 52–367b of the Connecticut General Statutes Annotated, "Execution against debts due from banking institution. Natural person as debtor," provides in relevant part:

(a) **Exempt debts.** Execution may be granted pursuant to this section against any debts due from any banking institution to a judgment debtor who is a natural person, except to the extent such debts are protected from execution ....

(b) **Issuance and service of execution.** If execution is desired against any such debt, the plaintiff requesting the execution shall notify the clerk of the court .... If the [requisite] papers are in order, the clerk shall issue such execution containing a direction that the officer serving the same shall ... make demand ... upon the ... [the] banking institution ... for payment of any such nonexempt debt due

to the judgment debtor and, after having made such demand, shall serve a true and attested copy of the execution, together with the affidavit and exemption claim form ... with the banking institution officer upon whom such demand is made.

(c) **Removal of funds from debtor's account.** If any banking institution upon which such execution is served and upon which such demand is made is indebted to the judgment debtor, it shall remove from the debtor's account the amount of such indebtedness not exceeding the amount due on such execution before its midnight deadline, as defined by section 42a–4–104.

(d) **Notice to debtor.** Upon receipt of the execution and exemption claim form from the serving officer, the banking institution shall forthwith mail copies thereof, postage prepaid,

Connecticut, N.A. v. Carillo, 240 Conn. 343, 348, 691 A.2d 1068 (1997). Under that provision, executions may be granted against the accounts of a judgment debtor held by a bank. After an execution is obtained from the state court, a sheriff is directed to serve the execution, an affidavit, and an exemption claim form upon the bank. After those papers have been served, the bank is required to remove the amount of the indebtedness from the judgment debtor's account by a midnight deadline, *i.e.*, midnight on the next banking day following the date of service, *see* C.G.S.A. § 42a–4–104(a)(10). The bank is not required to give prior notice to the judgment debtor. *See Bristol Savings Bank v. Risall*, No. CV 92 509344, 1992 WL 339222, at *1·(Conn.Super. Nov. 12, 1992). The bank must then mail copies of the served documents to the judgment debtor and hold the amount of the indebtedness for 15 days from such mailing in a segregated account. The judgment debtor is given 15 days to notify the bank that an exemption will be claimed as to the segregated funds. *See Fleet Bank Connecticut, N.A. v. Carillo, supra,* 240 Conn. at 348, 691 A.2d 1068 ("Protection from execution is derived from certain exemption statutes..."). If the judgment debtor claims an exemption, a hearing is scheduled to resolve any resulting dispute. *See C.G.S.A* . § 52–367b(e–g, i-j); *see also People's Bank v. Perkins,* 22 Conn.App. 260, 262–63, 576 A.2d 1313 (1990). Failure to assert an exemption will result in the payment to the sheriff of the amount withheld. The sheriff then pays that amount, less a sheriff's fee, to the judgment creditor.

The parties have not cited and this court has not found any authority on whether a judgment creditor, referred to in § 547(e)(1)(B), can acquire a judicial lien that is superior to the interest of the defendant [judgment creditor/transferee] after the service of the defendant's writ of execution but before the sheriff/defendant is paid. There is, however, support for the defendant's argument that the time of perfection occurs at the moment service of the execution was made by the sheriff upon the bank. *See, e.g., Hartford Postal Employees Credit Union, Inc. v. Rosemond,* 33 Conn.App. 395, 400, 635 A.2d 876 (1994) ("[P]riority of [wage] executions [under C.G.S.A. § 52–361a] is determined by the order of their presentation to the employer").

*Barnhill v. Johnson, supra,* 503 U.S. at 393, 112 S.Ct. 1386, resolved the question of when a transfer by ordinary check is made, and although that authority is not dispositive here, the Supreme Court's reasoning in that case is instructive. The Court determined that the transfer was made on the date that the check was honored and not on the date it was received by the payee because "receipt of a check gives the recipient no right in the funds held by the bank on the drawer's account." *Id.* at 399, 112 S.Ct. 1386. Nor is the recipient granted any rights upon receipt of the check against the payor bank if it refuses to honor the check. *Id.* In contrast, a judgment creditor has significant rights in the bank account of a judgment debtor after a writ of execution is served on the bank.

to the judgment debtor at his last known address with respect to the affected accounts on the records of the banking institution. The institution shall hold the amount removed from the debtor's account pursuant to subsection (c) of this section for fifteen days from the date of the mailing to the judgment debtor and during such period shall not pay the serving officer.
. . .
(h) **Disposition if no claim of exemption.** If no claim of exemption is received by the banking institution within fifteen days of the mailing to the judgment debtor of the execution and exemption claim form pursuant to subsection (d) of this section, the banking institution shall, upon demand, forthwith pay the serving officer the amount removed from the judgment debtor's account, and the serving officer shall

thereupon pay such sum, less his fees, to the judgment creditor, except to the extent otherwise ordered by a court.
. . .
(n) **Liability of bank.** If the banking institution fails or refuses to pay over to the serving officer the amount of such debt, not exceeding the amount due on such execution, such banking institution shall be liable in an action therefor to the judgment creditor named in such execution for the amount of the nonexempt moneys which it failed or refused to pay over, and the amount so recovered by such judgment creditor shall be applied toward the payment of the amounts due on such execution. Thereupon the rights of the banking institution shall be subrogated to the rights of the judgment creditor....
C.G.S.A. § 52–367b (1998).

The plaintiff argues that a judgment debtor's statutory right to claim an exemption in the segregated funds inures to the benefit of an intervening judgment creditor who levies on the judgment debtor's bank account during the gap period between the service of an execution and payment to the judgment creditor. *See Plaintiff's Memorandum of Law* at 7–8. The argument is unavailing. A judgment debtor's right to claim an exemption might eventually defeat a levying judgment creditor to the extent of the exemption, but that right does not affect the priority of liens held by levying judgment creditors. The right of exemption merely raises a dispute between the levying creditor and the judgment debtor as to entitlement to the segregated funds.

Under Connecticut law, a judgment creditor acquires an interest in a judgment debtor's bank account when service is made on the bank and it has notice of the judgment creditor's claim. Significantly, a statutory consequence of service is that the bank is required to segregate the sum sought by the execution from the judgment debtor's account. *See* C.G.S.A. § 52–367b(c). It is noted that a bank may exercise its right of setoff even after a writ of execution is served. *See, e.g., Normand Josef Enterprises, Inc. v. Connecticut National Bank,* 230 Conn. 486, 646 A.2d 1289 (1994). The right of setoff, however, must be exercised by the midnight deadline after which the bank is required to remove the levied funds from the judgment debtor's account, *see supra* at 67–68. *Id.* at 503, 507, 646 A.2d 1289. That right of setoff in this case would have to be exercised by midnight on the next banking day after service, *i.e.,* December 22, 1994. On the facts here, even if that date were regarded as the date on which a judgment creditor could not obtain a superior interest, it would fall outside of the preference period.

The apparent purpose of segregating the funds is to isolate them for the benefit of the judgment creditor, subject to a right of the judgment debtor/account holder to claim an exemption. The law of Connecticut recognizes that a right of setoff will trump a writ of execution if the right is exercised timely, but does not grant that superior right to any other intervening judgment creditors. In effect, the statute operates to limit an intervening creditor's reach of the segregated funds. The intent of the state statute to protect the judgment creditor's right to payment of the segregated funds during the gap period is buttressed by C.G.S.A. § 52–367b(n) which grants a cause of action to the judgment creditor against the bank for its failure or refusal to pay the amounts sought by the execution.

It is concluded that the writ of execution under C.G.S.A. § 52–367b in this case is perfected under § 547(e)(1)(B) when it is served upon the bank in accordance with that statute. At that time, a simple contract judgment creditor is foreclosed from acquiring a judicial lien that would be superior to the defendant's interest in the plaintiff's bank account. The effective date of the transfer was therefore December 21, 1994. As noted, the petition was filed on April 3, 1995. Because the service date falls outside of the preference period, the plaintiff has failed to satisfy § 547(b)(4). The transfers made pursuant to execution 1 are therefore not avoidable.

## ORDER

Accordingly,

IT IS ORDERED that the plaintiff's motion for summary judgment is denied; and

IT IS FURTHER ORDERED that judgment shall enter in favor of the defendant as a matter of law.[4]

---

4. The court may grant summary judgment to a nonmoving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[C]ourts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence").